WILLIAM G. THIEL, Corporation Counsel Eau Claire County
You request my opinion whether, assuming the adoption of appropriate ordinances under the provisions of sec. 59.21 (8)(a), Stats., the county board may require the appointment of all deputy sheriffs to be under civil service and, further, may restrict the maximum number of all deputy sheriffs to be appointed, with the only exceptions in both contexts being appointments of "honorary deputies" and "posse comitatus/section59.24" deputies.
I am of the opinion that the county board may require the appointment of regularly employed deputies to be in accordance with the pertinent civil service ordinance and the county board may fix the number and, the compensation, if any, of all deputy sheriffs, whether regularly employed or, honorary deputies. I am also of the opinion that notwithstanding the number fixed by ordinance, the sheriff *Page 335 
retains the power to call a posse comitatus pursuant to sec.59.24 (1), Stats.
Section 59.21, Stats., provides in pertinent part:
 SHERIFF; UNDERSHERIFF; DEPUTIES. (1) Within 10 days after entering upon the duties of his office the sheriff shall appoint some proper person, resident of his county, undersheriff, provided that in selecting such undersheriff, in counties where the sheriff's department is under civil service the sheriff, in conformity with county ordinance, may grant a leave of absence to a deputy sheriff, and appoint him undersheriff, or to any other position in the sheriff's department, on request of such appointee, and upon acceptance of such new appointment and duties, and after completion thereof, such appointee shall immediately be returned to his deputy sheriff position and continue therein without loss of any rights under the civil service law; the sheriff, however, may not grant such leave of absence to a deputy sheriff until he first secures the consent of the county board by resolution duly adopted by the county board, provided that in counties with a population of 500,000 or more the appointment of an undersheriff shall be optional; and within such time the sheriff shall appoint deputy sheriffs for his county as follows:
 (a) One for each city and village therein having one thousand or more inhabitants.
 (b) One for each assembly district t herein, except the district in which the undersheriff resides, which contains an incorporated village having less than one thousand inhabitants and does not contain a city or incorporated village having more than one thousand inhabitants.
 (c) Each deputy shall reside in the city or village for which he is appointed, or if appointed for an assembly district, shall reside in the village in such district.
 (2) He may appoint as many other deputies as he may deem proper.
 (3) He may fill vacancies in the office of any such appointee, and may appoint a person to take the place of any undersheriff or deputy who becomes incapable of executing the duties of his office. *Page 336 
 (4) A person appointed undersheriff or deputy for a regular term or to fill a vacancy or otherwise shall hold office during the pleasure of the sheriff.
 (5) The sheriff or his undersheriff may also depute in writing other persons to do particular acts.
 (6) Every appointment of an undersheriff or deputy, except deputations to do a particular act, and every revocation of such appointment shall be in writing and be filed and recorded in the office of the clerk of the circuit court.
 (7) In case of a vacancy in the office of sheriff the undersheriff shall in all things and with like liabilities and penalties execute the duties of such office until the vacancy is filled as provided by law.
 (8) (a) In counties having a population of less than 500,000, the county board may by ordinance fix the number of deputy sheriffs to be appointed in said county which number shall not be less than that required by sub. (1) (a) and (b), and fix the salary of such deputies . . . .
. . . .
 (d) Adoption of the ordinances provided for by this subsection shall not preclude the county board from thereafter amending or repealing such ordinances, but such amendment or repeal shall not be effective unless voted by the affirmative vote of three-fourths of the members-elect of such board. The civil service provisions of this section shall apply only to such deputies or traffic patrolmen who are regularly employed by the county or sheriff and shall not apply to honorary deputies. Notwithstanding the provisions of this subsection the county board may enact a civil service ordinance for county employes under s. 59.07 (20) which civil service ordinance may include deputy sheriffs or traffic patrolmen, or both.
Your inquiry primarily concerns the interrelationship between subsecs. (2) and (8) (a) and (d) above. Subsection (2) has been law in substantially its present form since the inception of statehood. Revised Statutes (1849), ch. 10, sec. 81. Subsection (8) was enacted by ch. 349, Laws of 1935, and since amendment in pertinent part, by ch. 253, Laws of 1937, has not materially changed. *Page 337 
County boards have only such legislative powers as are conferred upon them by statute, expressly or by clear implication. Maier v. Racine County, 1 Wis.2d 384, 385,84 N.W.2d 76 (1957). By the express language of paragraphs (a) and (d) of subsec. (8), above, the Legislature has clearly and unambiguously imbued the county boards with those powers relevant to your inquiry. The county boards have been given express authority to, by ordinance, "fix the number of deputy sheriffs to be appointed," subject to the minimum numbers established pursuant to sec. 59.21 (1)(a) and (b), Stats., and "fix the salary of such deputies." So also, the boards have been authorized to adopt, by ordinance, a civil service type selection procedure under which the sheriff must make his appointments of deputies.
Within the provisions of sec. 59.21, Stats., there exists only the exception: "The civil service provisions of this section shall apply only to such deputies . . . who are regularly employed by the county or sheriff and shall not apply to honorary deputies." Sec. 59.21 (8)(d), Stats.
To fully appreciate the impact of that express exception, it is necessary to determine what is meant by the terms "regularly employed" and "honorary deputies." The exception in sec. 59.21
(8)(d), Stats., was enacted by ch. 253, Laws of 1937. There is no pertinent legislative history on this law and the drafting files are no longer in existence. The words here in question should be given their common and ordinary meaning. Telemark Co. v. Dept. ofTaxation, 28 Wis.2d 637, 641, 137 N.W.2d 407 (1965). Black's LawDictionary, 617 (Rev. 4th ed. 1968), defines "employee" as "a person working for salary or wages." Similarly, Webster's SeventhNew Collegiate Dictionary, 271 (1970), offers the following single definition: "one employed by another usually for wages or salary and in a position below the executive level." In defining "regular," Black's, at 1450, states: "steady or uniform in course, practice, or occurrence; not subject to unexplained or irrational variation." lt is the antonym of "casual" or "occasional." Webster's, at 722, offers as synonyms, "normal," "typical" and "natural," while stating: "Regular stresses conformity to a rule, standard, or pattern."
Based upon these above definitions, it is my opinion that the term "regularly employed" as used in sec. 59.21 (8)(d), Stats., refers to compensated deputies who are typically hired in the normal pattern of employment for a sheriff's department as distinguished from *Page 338 
uncompensated deputies or persons deputized for a particular act or for emergencies. This definition is consistent with the action of the Legislature extending the opportunity for civil service selection and protection to deputy sheriffs. Applying the common and ordinary meaning of employe exempts from the application of the civil service provisions of sec. 59.21 (8), Stats., both uncompensated deputies and casual or occasional limited appointments. This is logical and avoids the possibility of unwarranted impediments in the appointment process. Consistent with this philosophy, our supreme court has stated: "The primary purpose of civil service laws is to improve the efficiency of the public service." State ex rel. Esser v. McBride, 215 Wis. 574,578, 254 N.W.2d 657 (1934) (emphasis supplied).
Are there individuals who are not "regularly employed" who are more than "honorary deputies?" The term "honorary deputy" was given a very narrow definition in a 1948 opinion of this office, 37 Op. Att'y Gen. 381 (1948). In the context of the specific fact situation presented in that opinion, it was stated that the term "honorary deputies" referred only "to persons to whom the title is given merely as a mark of compliment or respect." Id. at 383. That opinion utilized such narrow definition to arrive at a sensible result under the facts presented. It was, however, unnecessary to the resolution of the question to specifically apply that narrow definition to the term "honorary deputies" as set forth in sec. 59.21 (8)(d), Stats., even though the author of that opinion applied the narrow definition to sec. 59.21 (8)(d). The language in that opinion does not, in my view, determine the issue you raise. The definition of "honorary deputy" set forth in the earlier opinion should be narrowly confined to the fact situation there presented. 37 Op. Att'y Gen. 381 (1948) did clearly recognize the existence of two generally accepted definitions of an honorary officer. In addition to the narrow definition mentioned above, the opinion discussed, but rejected, a broader definition which would encompass uncompensated deputies with powers of the office. Id. at 382.
A broader definition of the term "honorary deputy" in sec.59.21 (8) (d), Stats., can be harmonized with the definition of "regularly employed." Both accepted definitions of "honorary" have one element in common, i.e., the office or position is not compensated. (See discussion of the two accepted definitions in 37 Op. Att'y Gen. at 382.) Honorary deputies are, therefore, by either definition, not *Page 339 
"employed" as that term is ordinarily understood. There is no evidence that the Legislature meant to restrict the term "honorary deputy" as used in sec. 59.21 (8)(d), Stats. On the contrary, one may assume that the Legislature, when enacting that language, took into consideration the existence of both definitions, i.e., uncompensated deputies with official powers and uncompensated deputies without any official powers.
We are dealing here with an exception which expressly applies only to the county civil service provisions. In this context "honorary deputy" should be given a broader definition in order to avoid a gap in the statute between the common and ordinary meaning of "regularly employed" and "honorary deputies." Adopting a broader definition of "honorary deputy" does not restrict the county board with respect to fixing the number of deputy sheriffs or fixing the salary of such deputies by ordinance.
The argument might be advanced that the granting of such powers by the Legislature to the county board is an unconstitutional usurpation of the powers of the office of sheriff and that such provisions are, therefore, void. State ex rel. Kennedy v. Brunst,26 Wis. 412 (1870). That question has been directly addressed by our supreme court in the context of a similar civil service statute involving Milwaukee County, ch. 259, Laws of 1917. InState ex rel. Milwaukee County v. Buech, 171 Wis. 474,177 N.W. 781 (1920), the supreme court refused to apply the rationale of the Kennedy case to the power of the sheriff to appoint deputies.
 With no disposition to question the doctrine of that case, we do not think it should be extended to the extent here urged. We think it should be confined to those immemorial principal and important duties that characterized and distinguished the office. While at common law the sheriff possessed the power to appoint deputies, it was not a power or authority that gave character and distinction to the office. Many other officers as well as sheriffs possessed the power. It was more in the nature of a general power possessed by all officers to a more or less extent and was not peculiar to the office of sheriff. It should not be held, in our judgment, that the constitution prohibits any legislative change in the powers, duties, functions, and liabilities of a sheriff as they existed at common law. If that were true, a constitutional amendment would be necessary in order to change the *Page 340 
duties of sheriffs in the slightest degree and, in this respect, "the state would be stretched on a bed of Procrustes."
Id. at 482.
To the extent that the provision of sec. 59.21 (2), Stats., conflicts with the express provisions of the more recently enacted sec. 59.21 (8), Stats., "the new provisions should prevail as the latest declaration of the legislative will." IA Sands, Sutherland Statutory Construction sec. 22.34, p. 196 (4th ed. 1973). (Obviously, if no conflicting ordinance has been enacted, the provision in subsec. (2) remains effective.) There is additional authority for this construction in the specific context of sec. 59.21, Stats. The supreme court held in Buech,171 Wis. at 483-84, that the residency requirements of sec. 59.21
(1) (c), Stats., were effectively superseded, for Milwaukee County, by the more recently enacted provisions of ch. 259, Laws of 1917. Similarly, in an opinion of this office, 24 Op. Att'y Gen. 747, 749 (1935), sec. 59.21 (4), Stats., relating to the tenure of deputy sheriffs, was found to have been superseded, where a proper ordinance was in effect, by the more recently enacted express provisions of sec. 59.21 (8)(c), Stats. See also, 38 Op. Att'y Gen. 245, 247 (1949)
It should be noted here that language in 35 Op. Att'y Gen. 474, 475 (1946), implying that a sheriff may appoint as many deputies as he deems proper, notwithstanding the enactment of an ordinance fixing the number of deputy sheriffs, is hereby repudiated. The reasoning of that opinion was based upon 18 Op. Att'y Gen. 335 (1929), which opinion had nothing to do with the conflict between sec. 59.21 (8)(a), Stats., and sec. 59.21 (2), Stats., since it was written six years before the enactment of subsec. (8).
Prior to 1973, the Legislature had provided the county boards with the express power, inter alia, to abolish certain county positions such as that of deputy sheriff. Sec. 59.15 (2)(b), Stats. (For a discussion of the application of this section to the office of deputy sheriff, see 49 Op. Att'y Gen. 26 (1960).) Section 59.15 (2)(a), Stats., expressly limited the application of that subsection to positions, "the salary or compensation for which is paid in whole or in part by the county." Chapter 118, Laws of 1973, in pertinent part, repealed sec. 59.15 (2)(b), Stats., and created sec. 59.025, Stats. Section *Page 341 
59.025 (3)(b), Stats., gave to the county boards the power to "abolish . . . any county office, department, committee, board, commission, position or employment." No longer was this power expressly limited to compensated positions. This additional statutory power of the county board reinforces my opinion that such boards have the power to fix the number of deputy sheriff positions, whether compensated or uncompensated.
The one exception to the ability of the county board to fix the number of deputy sheriffs at or above the minimum set forth in sec. 59.21 (1)(a) and (b), Stats., results from the superior power and duty of the sheriff to call upon citizens to aid him in preserving the peace or making an arrest. This has often been referred to as the power to call up a posse comitatus. Kagel v.Brugger, 19 Wis.2d 1, 5-6, 119 N.W.2d 394 (1963); Schofield v.Industrial Comm., 204 Wis. 84, 88, 235 N.W. 396 (1931). This is a power which has been expressly recognized by the Legislature and included in the provisions of sec. 59.24 (1), Stats., which reads as follows:
 (1) Sheriffs and their undersheriffs and deputies shall keep and preserve the peace in their respective counties and quiet and suppress all affrays, routs, riots, unlawful assemblies and insurrections; for which purpose, and for the service of processes in civil or criminal cases and in the apprehending or securing any person for felony or breach of the peace they and every coroner and constable may call to their aid such persons or power of their county as they may deem necessary.
Moreover, I believe that this power is one of those historical powers reserved to the office of sheriff by the Wisconsin Constitution. See, in this regard, 61 Op. Att'y Gen. 79, 82-84 (1972), and the cases and authorities there cited. For a more detailed discussion of emergency circumstances under which calls under sec. 59.24, Stats., for a posse comitatus may be authorized, see my opinion at 56 Op. Att'y Gen. 96, 99-103 (1967).
I must assume that no county ordinance enacted pursuant to sec.59.21 (8) (a), Stats., would be drafted so clumsily as to raise the possibility that the county board may have intended to restrict a sheriff from appointing deputies in such emergency situations. However, to *Page 342 
the extent that any ambiguity might presently exist in such ordinances, it is my opinion that this historical power of the sheriff would not thereby be restricted.
I cannot overemphasize the importance that those who draft ordinances restricting the number of deputies a sheriff may appoint and those who enact them recognize the multitude of good and sufficient reasons for appointments, as the need arises, of all types of deputy sheriffs. Our Legislature has always recognized, for instance, the advisability of allowing a sheriff to deputize a person to do a particular act. Revised Statutes 1849, ch. 10, sec. 81; sec. 59.21 (5), Stats. Most importantly, it has been a well recognized practice for sheriffs in this state to deputize law enforcement officers of other local law enforcement agencies in their county on a cooperative basis. This has been done so as to obviate the jurisdictional problems that might arise because of the limited power such officers otherwise would have to act beyond their municipal boundaries. 61 Op. Att'y Gen. 79, 85 (1972).
An understanding of the diverse nature and functions of deputies should lead to a better appreciation of the complex responsibilities of the office of sheriff. Such understanding and recognition is essential if a county board is to enact appropriately flexible ordinances in accordance with the powers given to it under sec. 59.21 (8), Stats.
BCL:JDH