Dennis Kocken, Plaintiff-Respondent,

v.

Wisconsin Council 40, AFSCME, AFL-CIO and
Brown County Mental Health Center Employees,
Local 1901, AFSCME, AFL-CIO,
Defendants-Appellants.

Supreme Court

*No. 2005AP2742. Oral argument January 16, 2007.*
*—Decided June 14, 2007.*

2007 WI 72

(Also reported in 732 N.W.2d 828.)

267

For the defendants-appellants there were briefs (in the court of appeals) by *Bruce F. Ehlke, Danielle L. Carne,* and *Hawks Quindel Ehlke & Perry, S.C.,* Madison, and oral argument by *Bruce F. Ehlke.*

For the respondent there was a brief (in the court of appeals) by *Thomas P. Godar* and *Whyte Hirschboeck Dudek S.C.,* Madison, and oral argument by *Thomas P. Godar.*

An amicus curiae brief was filed by *Gregg J. Gunta, Kevin P. Reak, John A. Wolfgang,* and *Gunta & Reak, S.C.,* Milwaukee, on behalf of the Badger State Sheriff's Association.

An amicus curiae brief was filed by *George F. Graf* and *Sandra G. Radtke,* Milwaukee, on behalf of the Office and Professional Employees International Union, Local 35.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This case is before the court on certification by the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (2003–04).[1]

¶ 2. The circuit court for Brown County, Mark A. Warpinski, Judge, granted a permanent injunction to Dennis Kocken, Brown County Sheriff, against the defendants, Wisconsin Council 40 AFSCME, AFL-CIO (the District Council) and Local 1901, AFSCME, AFL-CIO (AFSCME Local 1901) (which represents the Brown County employees who provide food service at the Brown County jail). The circuit court enjoined the defendants from pursuing any type of action before the Wisconsin Employment Relations Commission or seeking injunctive relief insofar as it would affect Sheriff Kocken's ability to hire Aramark Corporation as a food service provider at the Brown County jail. Furthermore, the circuit court ordered AFSCME Local 1901 to withdraw its prohibited practice complaint filed with the Wisconsin Employment Relations Commission with prejudice.

¶ 3. This case arose as a result of Sheriff Kocken's proposal to stop using county employees to prepare meals for the Brown County jail and instead contract with a private food service provider. The issue presented is whether Sheriff Kocken's decision to enter into a contract for the preparation of meals for jail inmates falls within the sheriff's constitutional powers, rights, and duties, and is thus not subject to legislative

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

limitations, including a collective bargaining agreement between Brown County and county employees.[2]

¶ 4. For the reasons set forth, we hold that the Sheriff's hiring and firing of personnel to provide food service to the county jail is not a time immemorial, principal, and important duty that characterizes and distinguishes the office of sheriff, and as such, is not within the Sheriff's constitutional powers. Rather, the hiring and firing of personnel to provide food service to the county jail falls within the "mundane and commonplace" "internal management and administrative duties"[3] not protected by the constitution. Hiring and firing personnel to provide food to inmates is subject to legislative regulation, including collective bargaining under Wis. Stat. § 111.70. The circuit court erred as a matter of law when it concluded that the contract with Aramark at issue is within the sheriff's constitutional prerogative. This error of law rendered the circuit court's judgment an erroneous exercise of discretion.

¶ 5. We therefore reverse the judgment of the circuit court and remand the cause to the circuit court to dismiss Sheriff Kocken's complaint seeking declaratory relief. We also vacate the permanent injunction. AFSCME Local 1901 is no longer restrained from pursuing its complaint filed with the Wisconsin Em-

---

[2] The collective bargaining agreement was entered pursuant to Wis. Stat. § 111.70, the Municipal Employment Relations Act. The Municipal Employment Relations Act requires that municipal employers bargain collectively with employees and abide by any agreement reached. *City of Janesville v. WERC*, 193 Wis. 2d 492, 499, 535 N.W.2d 34 (Ct. App. 1995).

[3] *Heitkemper v. Wirsing*, 194 Wis. 2d 182, 193, 533 N.W.2d 770 (1995); *Manitowoc County v. Local 986B*, 168 Wis. 2d 819, 820, 484 N.W.2d 534 (1992).

ployment Relations Commission, pursuant to Wis. Stat. § 111.70, the Municipal Employment Relations Act.

## I

¶ 6. The parties stipulated to the following facts in the circuit court:

¶ 7. Prior to 2001, food for inmates at the Brown County jail was prepared at the jail by five Brown County Sheriff's Department employees represented by the Teamsters Union. Jail inmates were also involved in all aspects of the food service.

¶ 8. In 2001 Brown County completed construction of a new county jail facility. A decision was made in 2001 to consolidate food preparation for the county mental health center, the county work release center, and the county jail in the new jail facility, although not all the food for the mental health center would be prepared or processed at the jail. The kitchen built in the new jail facility was constructed to have a capacity that would accommodate this consolidated food preparation plan.

¶ 9. As part of this consolidation plan, a new mental health center was to be constructed adjacent to the new jail facility, with a tunnel connecting the two buildings to facilitate, among other services, the delivery of food from the jail to the mental health center. There were no plans to similarly connect the work release center, which would remain located at the old county jail, more than five miles from the new jail facility.

¶ 10. As a result of this consolidation in food services at the jail, the employees preparing food at the jail and at the mental health center became a single group of county employees represented by AFSCME Local 1901. Certain members of AFSCME Local 1901 began preparing food in the jail for jail inmates, for the

273

work release center and for the mental health center, and other members of AFSCME Local 1901 remained engaged in food service activities at the mental health center. A collective bargaining agreement was created between AFSCME Local 1901 and Brown County, which governs the wages, hours, and other conditions of employment of these employees.

¶ 11. The proposed new county mental health center was not built, and there is no plan to connect the existing mental health center with the new jail.

¶ 12. In order to provide food service to the existing mental health center and the work release center, two meal deliveries are made each day, by truck, from the kitchen in the new jail to the mental health center and to the work release center. Dishes are returned from these locations to the jail kitchen.

¶ 13. Dennis Kocken was elected as the sheriff of Brown County in November 2002.

¶ 14. Sheriff Kocken proposed that the food preparation at the Brown County jail be handled as a combination of inmate labor and the services of a private food provider, with the private company overseeing the provision of meals for the inmate population at the jail and the work release center.

¶ 15. Under Sheriff Kocken's plan, the Brown County employees represented by AFSCME Local 1901 who prepare food at the Brown County jail would no longer work at the jail, unless they were independently hired by the private food service company.

¶ 16. On behalf of these Brown County employees, AFSCME Local 1901 demanded that Brown County bargain regarding the decision to subcontract the food preparation at the jail. Brown County refused.

¶ 17. In June 2004, AFSCME Local 1901 filed a complaint with the Wisconsin Employment Relations

Commission against Brown County alleging that the County's refusal to bargain constituted a prohibited practice in violation of Wis. Stat. § 111.70(3)(a).[4]

¶ 18. On June 28, 2004, Sheriff Kocken filed a complaint for declaratory relief with the circuit court for Brown County against the District Council.[5] An amended complaint named AFSCME Local 1901 as an additional party. Sheriff Kocken also sought injunctive relief.

¶ 19. On July 14, 2004, by agreement of the parties, counsel for AFSCME Local 1901 requested a stay of proceedings at the Wisconsin Employment Relations Commission, pending the outcome of the circuit court litigation.

¶ 20. In addition to the stipulated facts, the circuit court made the following findings of fact after receiving the parties' briefs, supporting affidavits, and testimony in connection with the hearing on the preliminary injunction:

- Idle inmates create more problems for the sheriff's staff than inmates who are occupied in some type of activity. Under the present system of meal preparation by the mental health center staff, there is less inmate activity.

---

[4] Wisconsin Stat. § 111.70(3)(a) states in relevant part: "It is a prohibited practice for a municipal employer individually or in concert with others: . . . 4. To refuse to bargain collectively with a representative of a majority of its employees in an appropriate collective bargaining unit. . . ."

[5] In their answer, the District Council and AFSCME Local 1901 alleged, among other things, that the preparation of food for the jail population was not a constitutional power of the sheriff and that Sheriff Kocken had failed to join a necessary party to the action, the Wisconsin Employment Relations Commission, which had primary jurisdiction to hear the complaint filed by the Brown County employees at issue.

275

- Increasing inmate work in meal preparation would improve morale because inmates would be occupied in productive activity.

- Aramark, which would offer the contract food service under Sheriff Kocken's proposal, would train inmates in food service and maintain a log of such training.

- Meal preparation was formerly a part of the sheriff's budget.

- Savings would be realized by Sheriff Kocken's contracting with Aramark, and Sheriff Kocken intended to use these savings to fill positions, continue training, and replace law enforcement vehicles.

- The former county executive acknowledged that had the then-sheriff refused to go along with the consolidation plan in 2001, the County would have been required to construct two kitchens, one for the new jail and one for the proposed mental health center.

- Approximately one million dollars were diverted from the mental health center construction budget to construct the jail kitchen facility.

¶ 21. In its decision on the preliminary injunction, the circuit court stated that "this record is devoid of any suggestion that anyone attempted to enjoin the Sheriff from the exercise of his constitutionally vested authority of deciding how the meal service was to be provided in 2001. That decision of the Sheriff was accomplished without objection so far as the Court is aware from the record that has been provided."[6]

---

[6] Based on these findings, the circuit court concluded as a matter of law that it was within the sheriff's powers, rights, and duties to contract with a food service provider for the county jail, explaining that "[i]t is clear that the Sheriff in the past has determined how he will provide the meals. For example, in 2001, the Sheriff agreed to consolidate the food services with the food

¶ 22. On November 5, 2004, the circuit court granted Sheriff Kocken a preliminary injunction, finding a likelihood of success on the merits, a likelihood of irreparable harm, and an inadequate remedy at law. The defendants moved for reconsideration of the circuit court's decision; the motion was denied.

¶ 23. On July 8, 2005, the circuit court issued its decision granting a permanent injunction, and on October 31, 2005, the circuit court entered its final judgment and amended order granting Sheriff Kocken a permanent injunction. The defendants appealed this judgment and order.

---

services of the Mental Health Center. It was the Sheriff's prerogative, not obligation to involve himself in this joint effort."

The circuit court stated it was basing its legal conclusion of the sheriff's power on the testimony of Ms. Nussbaum, the former county executive, reasoning as follows: "[T]his Court relies on the testimony of Brown County's former County Executive, Ms. Nancy Nusbaum, who testified that had the Sheriff decided not to join in a joint kitchen effort, that it would have been the County's responsibility to have two kitchens: one for the jail and one for the then anticipated new construction of the County's Mental Health Center."

Ms. Nusbaum's actual testimony, however, does not support the circuit court's description of the testimony. Ms. Nusbaum testified that during the discussions of a consolidated kitchen, in which the then-sheriff was involved, no one raised the issue of the constitutional power of the sheriff. Furthermore, she testified that she would have acceded to the then-sheriff's wish to have two kitchens, one in each facility (had he so stated), not because she could not tell the sheriff what to do or because of any constitutional issues, but because it was her practice to seek consensus and not to go forward with a plan if a key player opposed it.

Past practice is not relevant to the sheriff's constitutional authority. *Dunn County v. WERC*, 2006 WI App 120, ¶ 16, 293 Wis. 2d 637, 718 N.W.2d 138.

277

## II

¶ 24. A circuit court's decision whether to grant injunctive relief is within the sound discretion of the circuit court.[7] "Injunctions, whether temporary or permanent, are not to be issued lightly. The cause must be substantial."[8]

¶ 25. This court reviews a circuit court order granting injunctive relief to determine whether the circuit court erroneously exercised its discretion.[9] A circuit court's discretionary decision will be sustained if the circuit court has examined the relevant facts, applied the proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable court could reach.[10] If in exercising its discretion a circuit court errs in deciding a question of law upon which its exercise of discretion rests, the circuit court has erroneously exercised its discretion.[11]

¶ 26. In reviewing a circuit court's discretionary decision, an appellate court decides questions of law imbedded in the circuit court's exercise of discretion,

---

[7] *Hoffmann v. Wis. Elec. Power Co.*, 2003 WI 64, ¶ 10, 262 Wis. 2d 264, 664 N.W.2d 55.

[8] *Werner v. A. L. Grootemaat & Sons, Inc.*, 80 Wis. 2d 513, 520, 259 N.W.2d 310 (1977).

[9] *Hoffmann*, 262 Wis. 2d 264, ¶ 10.

[10] *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982).

[11] *State v. Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968) ("If a judge bases the exercise of his discretion upon an error of law, his conduct is beyond the limits of discretion.").

278

including questions of constitutional law, independently of the circuit court but benefiting from its analysis.

¶ 27. In the present case, the determinative question of law governing Sheriff Kocken's request for declaratory and injunctive relief is whether the Sheriff's hiring and firing of personnel to provide food service for the county jail is within the constitutional powers, rights, and duties of the office of sheriff. If the circuit court erred in deciding this question of law, we need not address the other requirements for a permanent injunction.[12]

¶ 28. The circuit court held that AFSCME Local 1901, if allowed to proceed with its complaint before the Wisconsin Employment Relations Commission, would impinge upon a constitutional power of Sheriff Kocken. The circuit court reasoned as follows: The operation of the jail is "one of [the] obvious constitutional duties" of the office of sheriff; "the providing of meals is an essential function of operating a jail just as is having a secured facility;" and "once it has been determined that the Sheriff's actions fall under this constitutional um-

---

[12] Before the circuit court can issue a permanent injunction, "a plaintiff must show a sufficient probability that future conduct of the defendant will violate a right of and injure the plaintiff." *Pure Milk Prods. Coop. v. Nat'l Farmers Org.,* 90 Wis. 2d 781, 800, 280 N.W.2d 691 (1979). A permanent injunction will not be granted unless there is the threat of irreparable injury that cannot be compensated with a remedy at law. *Am. Mut. Liab. Ins. Co. v. Fisher,* 58 Wis. 2d 299, 305, 206 N.W.2d 152 (1973). In other words, "[i]n order to warrant an injunction, the injury must be real, serious, material, and permanent, or potentially permanent; the right to the injunction must be clear; and the reasons for granting it strong and weighty." *Hartung v. Milwaukee County,* 2 Wis. 2d 269, 281, 86 N.W.2d 475 (1957) (quoting 66 C.J.S. *Nuisances* § 111c, at 875).

brella that it is up to the Sheriff to decide how those services will be provided."

¶ 29. Because the circuit court determined that it was within the constitutional powers, rights, and duties of the sheriff to hire the food service provider for the county jail, the circuit court concluded that Sheriff Kocken could act without interference from the legislature and without limitation by a collective bargaining agreement. Accordingly, the circuit court was satisfied that Sheriff Kocken's request for injunctive relief was warranted.

## III

¶ 30. In deciding a question of state constitutional law, we turn first to the text of the Wisconsin Constitution.

¶ 31. The Wisconsin Constitution establishes the office of sheriff, provides for the selection and term of the sheriff, places restrictions on the sheriff's holding other partisan office, and creates requirements for the giving of security.

¶ 32. Article VI, section 4(1)(a) of the Wisconsin Constitution states that "sheriffs . . . shall be chosen by the electors of the respective counties once in every 2 years."[13] "When a vacancy occurs in the office of sheriff, the vacancy shall be filled by appointment of the governor and the person appointed shall serve until his or her successor is elected and qualified."[14] The consti-

---

[13] The constitution was recently amended to provide for the election of sheriffs to four-year terms. *See* Wis. Const. Art. VI, § 4(1)(b).

[14] Wis. Const. Art. VI, § 4(6).

tution further provides that sheriffs may not hold any other partisan office[15] and that sheriffs may be required by law to renew their security from time to time and, in default of giving such new security, their office shall be deemed vacant.[16]

¶ 33. The Wisconsin Constitution does not delineate the powers, rights, and duties of the office of sheriff. The case law has given meaning to the powers, rights, and duties of the office of sheriff protected by the state constitution.

¶ 34. Acknowledging that "the constitution nowhere defines what powers, rights and duties shall attach or belong to the office of sheriff," the court, in 1870 in *State ex rel. Kennedy v. Brunst,* 26 Wis. 412, 414 (1870), concluded that the framers of the constitution intended the office of sheriff to have "those generally recognized legal duties and functions belonging to it in this country, and in the territory, when the constitution was adopted."[17] The court further explained that "part and parcel of the duties from time immemorial belonging to [the office of sheriff] by law" are constitutionally protected.[18]

¶ 35. The court reasoned that unless these "time immemorial" duties were constitutionally protected

---

The court concluded that "[t]he office of sheriff, in a certain sense, is a constitutional office; that is, the constitution provides that sheriffs shall be chosen by the electors of the respective counties, once in every two years and as often as vacancies shall happen." *State ex rel. Kennedy v. Brunst,* 26 Wis. 412, 413–14 (1870).

[15] Wis. Const. Art. VI, § 4(3)(a).

[16] Wis. Const. Art. VI, § 4(3)(b).

[17] *Brunst,* 26 Wis. at 414.

[18] *Id.* at 413–14; *see also Manitowoc County v. Local 986B,* 168 Wis. 2d 819, 824, 484 N.W.2d 534 (1992).

from interference by others, the constitutional provision securing the people the right to choose sheriffs would become meaningless. This analysis was set forth in *Brunst*, 26 Wis. at 414–15, as follows:

> And it seems to us unreasonable to hold, under a constitution which carefully provides for the election of sheriffs, fixes the term of office, etc., that the legislature may detach from the office its duties and functions, and transfer those duties to another officer. In this case it is said that the legislature has attempted to take the largest share of the duties of sheriff, in point of responsibility and emolument, and to commit it to an officer selected by the county board of supervisors. If the legislature can do this, why may it not deprive the sheriff of *all* the duties and powers appertaining to his office, and transfer them to some officer not chosen by the electors? It would certainly be a very idle provision of the constitution, to secure to the electors the right to chose their sheriffs, and at the same time leave to the legislature the power to detach from the office of sheriff all the duties and functions by law belonging to that office when the constitution was adopted, and commit those duties to some officer not elected by the people. For this would be to secure to the electors the right to choose a sheriff in name merely, while all the duties and substance of the office might be exercised by and belong to an officer appointed by some other authority.

¶ 36. The *Brunst* court thus formulated the inquiry into the sheriff's constitutional powers, rights, and duties as an historical one, examining the nature of the office of sheriff as it existed when the constitution was adopted. In later cases, beginning with *State ex rel. Milwaukee County v. Buech,* 171 Wis. 474, 482, 177 N.W. 781 (1920), the inquiry into the constitutional prerogatives of the office of sheriff continued to focus on the historical attributes of the office, but the court limited

the constitutional powers, rights, and duties of the sheriff to only those "immemorial principal and important duties that characterized and distinguished the office."[19]

¶ 37. In *Buech,* the sheriff challenged the application of the civil service law to a deputy as unconstitutional. The *Buech* court held that the civil service law applied to the sheriff's hiring deputies, although "at common law the sheriff possessed the power to appoint deputies." According to the *Buech* court, the power to hire does not give character and distinction to the office; it is not a power "peculiar" to the office of sheriff. The state constitution does not, in the words of the *Buech* court, "prohibit[] any legislative change in the powers, duties, functions, and liabilities of a sheriff as they existed at common law."[20]

¶ 38. The court explained in *Heitkemper v. Wirsing,* 194 Wis. 2d 182, 189, 533 N.W.2d 770 (1995), that *Buech* "rejected any interpretations of *Brunst* which tried to include within the constitutionally protected functions of the sheriff all powers held by the sheriff at the common law. Rather, the [*Brunst*] court indicated that the test for determining which functions were constitutionally protected was more exacting." The *Heitkemper* court explained that "internal management and administrative duties," while important, fall within the "mundane and commonplace" duties not protected by the constitution.[21]

---

[19] *State ex rel. Milwaukee County v. Buech,* 171 Wis. 474, 482, 177 N.W. 781 (1920).

[20] *Id.*

[21] *Heitkemper,* 194 Wis. 2d at 193; *Local 986B,* 168 Wis. 2d at 824, 831 ("The legislature may still regulate the administrative and executive duties of a sheriff. . . . ").

¶ 39. Cases addressing the constitutional dimensions of the office of sheriff establish the following criteria for identifying a sheriff's constitutional powers, rights, and duties: certain immemorial, principal, and important duties of the sheriff at common law that are peculiar to the office of sheriff and that characterize and distinguish the office are constitutionally protected from legislative interference.[22]

¶ 40. Nevertheless, the constitution does not prohibit all legislative change in the powers, duties, functions, and liabilities of a sheriff as they existed at common law.[23] "[I]internal management and administrative duties . . . [that] neither gave 'character' nor 'distinction' to the office of sheriff . . . fall within the mundane and common administrative duties of a sheriff which may be regulated by the legislature."[24]

¶ 41. The court has carefully explained its reasoning for allowing legislative change to certain powers, rights, and duties of a sheriff as follows: If the legislature could not act, "a constitutional amendment would be necessary in order to change the duties of sheriffs in the slightest degree, and in this respect 'the state would be stretched on a bed of Procrustes.' "[25]

---

[22] *Buech,* 171 Wis. 2d at 482; *see also Local 986B,* 168 Wis. 2d at 826–27.

[23] *Buech,* 171 Wis. at 482.

[24] *Heitkemper,* 194 Wis. 2d at 193.

[25] *Buech,* 171 Wis. at 482 (quoted with approval in *Heitkemper,* 194 Wis. 2d at 190). As the court later explained in *Local 986B,* 168 Wis. 2d at 824, "Procrustes was a mythological bandit known for placing his victims on an iron bed, tying them to it, and then making them the right length for it by stretching those who were too short and cutting off as much as was necessary from those who were too long." *Id.* at 826 n.2.

¶ 42. In sum, powers, rights, and duties of the office of sheriff that are "mundane and commonplace" "internal management and administrative" duties, even if they are ever-present aspects of the constitutional office, are not accorded constitutional status.[26] To ignore an analysis of whether the duty at issue is mundane and commonplace and whether it is an internal management and administrative duty is to ignore or misread our case law and to risk over-constitutionalizing the powers of the office of the sheriff, in contravention of the framers' intentions.

¶ 43. This traditional constitutional analysis of whether a power, right, or duty of the office of sheriff is immemorial and distinctive (and constitutionally protected) or mundane and commonplace, internal management and administrative (and not constitutionally protected) is easily apparent from the cases and is easy to state. This traditional constitutional analysis is not, however, easy to apply. Each of the cases coming to the court involves an action of the sheriff that is in some way related to a recognized constitutional power, right, and duty of the office, as in the instant case involving the operation of the jail and care of inmates. Some cases have protected the office of sheriff from legislative interference; others have not.

¶ 44. We begin our analysis of the case law by stating that the operation of the jail and the custody and care of jail inmates are part and parcel of the duties from time immemorial belonging to the office of sheriff and are distinctive to the office. In 1870, the *Brunst* court stated that "[a]mong those duties [of a sheriff], one

---

[26] *Local 986B,* 168 Wis. 2d 819, 826. *See also Heitkemper,* 194 Wis. 2d at 193.

of the most characteristic and well acknowledged was the custody of the common jail and of the prisoners therein."[27] Case law and the opinions of the attorney general have continued to recognize that the operation of the jail is a primary duty of the office of sheriff that "gave character and distinction to the office" at common law and thus is within the constitutional prerogative of the sheriff.[28]

¶ 45. Aspects of the operation of the jail, however, including the provision of food for inmates, have been governed by statute. As early as 1881, the court held that the sheriff has an obligation to furnish board for those housed at a jail. But the court did not characterize the duty to furnish board as a "time immemorial" task. Rather the court located the sheriff's responsibility in the statutory obligations prescribed by the legislature.[29] The court declared that "[t]he duty of furnishing board for persons confined in jail is absolutely imposed upon the sheriff by law."[30] The applicable "statute imposes the absolute duty and responsibility upon that officer 'to take the charge and custody of the jail of his county and the persons therein, and keep them himself, or by his deputy or jailer.' "[31]

¶ 46. Today, Wis. Stat. § 302.37 requires the sheriff to take custody of inmates and provide them with adequate nourishment. Wisconsin Stat. § 302.37(1)(a) states in relevant part:

---

[27] *Brunst,* 26 Wis. at 414.

[28] *Buech,* 171 Wis. at 482; *Brunst,* 26 Wis. at 414; 68 Op. Att'y Gen. 330, 332 (Nov. 7, 1979).

[29] *Bell v. Fond du Lac County,* 53 Wis. 433, 434, 10 N.W. 522 (1881).

[30] *Id.*

[31] *Id.* at 433–34.

The sheriff or other keeper of a jail shall constantly keep it clean and in a healthful condition and pay strict attention to the personal cleanliness of the prisoners and shall cause the clothing of each prisoner to be properly laundered. The sheriff or keeper shall furnish each prisoner with clean water, towels and bedding. The sheriff or keeper shall serve each prisoner 3 times daily with enough well-cooked, wholesome food. The county board shall prescribe an adequate diet for the prisoners in the county jail.

¶ 47. Of course, the simple fact that the legislature codified a duty and responsibility of the sheriff, like providing food for jail inmates, does not strip sheriffs of any constitutional protections they may have regarding this duty. Likewise, the simple fact that the task of providing food to inmates in the jail has been a long-standing statutory responsibility of the sheriff does not imbue this duty with constitutional protections.[32]

¶ 48. The dispute between the parties in the instant case centers on whether a sheriff's hiring and firing of personnel to provide food service to inmates, including Sheriff Kocken's contracting with a food service provider for jail inmates at the Brown County jail, is within the sheriff's constitutional powers, rights, and duties.[33]

---

[32] *See Dunn County v. WERC,* 2006 WI App 120, ¶ 9, 293 Wis. 2d 637, 718 N.W.2d 138. According to the record, the Brown County sheriff and his wife at one time personally handled food service in the jail.

[33] Although Sheriff Kocken states the issue as his constitutional power to choose a meal delivery system, he attempts to justify his ability to select a food service provider as part of a broader power than just the provision of food. According to Sheriff Kocken, this decision about the food service provider has important ramifications: it may generate opportunities for

¶ 49. Sheriff Kocken insists that the circuit court properly analyzed the law when it found that the provision of food at the jail was within the "time immemorial" duties of the office of sheriff. According to Sheriff Kocken, the case law makes clear that the operation of the jail, including the care of the inmates of the jail, is a constitutional duty of the office of sheriff such that a sheriff is to be afforded full discretion in performing this duty. Sheriff Kocken urges this court to adopt the circuit court's reasoning: Provision of food is a central aspect of caring for inmates and operating the jail, and therefore, the sheriff has sole constitutional responsibility to manage and administer this constitutional task, including hiring the food service provider.

¶ 50. In contrast, the defendants, the District Council and AFSCME Local 1901, contend that the hiring and firing of personnel to provide food service for the county jail is not within the constitutional prerogatives of the office of sheriff and is instead one of the mundane and commonplace internal management and administrative tasks that do not give character and distinction to the office. Accordingly, the defendants argue that the hiring of a food service provider for the

inmate rehabilitation, like training and certification; create fiscal savings; and affect other budgetary considerations. These collateral consequences do not, however, transform our inquiry into whether the sheriff has the constitutional power to design and implement rehabilitative programs at the jail or to reduce expenditures. The parties focus their arguments on the sheriff's duty to provide food, not the ramifications of the decision, and so do we. The question presented by the parties and the non-party briefs is a legal question of whether the sheriff had the ability to choose a food provider for the jail, not whether he made the right choice and not whether the sheriff has powers to implement rehabilitative programs or make budgetary decisions.

county jail can be regulated by the legislature and can be subject to a collective bargaining agreement entered pursuant to the Municipal Employee Relations Act.

¶ 51. We do not approach the question presented by writing on a blank slate. We gain guidance in the instant case about the proper application of the criteria defining the constitutional and non-constitutional powers, rights, and duties of the office of sheriff from prior court decisions that addressed the constitutional prerogatives of the office of sheriff, as well as from the published opinions of the Wisconsin attorney general.[34] We first examine cases recognizing the constitutionally protected powers, rights, and duties of the office of sheriff and then the cases declaring certain powers, rights, and duties not constitutionally protected.

¶ 52. The operation of a jail and care of the jail inmates has been recognized as within the constitutional powers of the sheriff, because the operation of the jail gives character and distinction to the office of sheriff. Thus in 1870, the court struck down legislation assigning the entire operation of the jail to an officer other than the sheriff. The court declared unconstitutional a statute making the Milwaukee house of correction the Milwaukee County jail and making the inspector of the house of correction, ex officio, the jailer of the county with exclusive charge and custody of the jail and all prisoners therein. The court held that the legislature could not take from the constitutional office of sheriff a

---

[34] Attorney General Opinions, whether published or unpublished, are not binding authority on this court. The court may, however, choose to treat them as persuasive authority and gain guidance from their analyses. The Attorney General's Office has published numerous opinions, in a period spanning over one hundred years, expounding on the constitutional prerogatives of the office of sheriff.

part of the office and transfer it to another government officer who was appointed in a different manner and held a different tenure than that provided for the sheriff by the state constitution.[35]

¶ 53. Furthermore, the attorney general, in an opinion published in 1979, opined that because of the constitutional nature of the sheriff's authority over the jail, the sheriff could order the county clerk to return a set of jail keys to the sheriff, even though statutes gave the county board the power to construct and maintain the jail and declared that the county property shall be held by the clerk in the name of the county. The attorney general explained that because the power over the jail "is an important attribute of the constitutional office of sheriff, the county board cannot constitutionally effect a change in the substance of that power by transferring custody of the jail to the county clerk or by requiring the sheriff and the clerk to share custody of the jail."[36]

¶ 54. Another constitutionally protected power and prerogative of the office of sheriff recognized by the courts is the sheriff's special relationship with the courts. *See Wis. Prof'l Police Ass'n v. Dane County,* 106 Wis. 2d 303, 305, 316 N.W.2d 656 (1982) (*WPPA I*). This relationship between the sheriff and the courts is "peculiar to" and "gives character and distinction to" the office of sheriff. The duties performed by the court officer designated by the sheriff are among the principal and important duties that characterize the office of sheriff, and, therefore, the sheriff may not be restricted

---

[35] *Brunst,* 26 Wis. at 415. *See also Wis. Prof'l Police Ass'n v. Dane County,* 106 Wis. 2d 303, 313, 316 N.W.2d 656 (1982) (*WPPA I*).

[36] 68 Op. Att'y Gen. 330, 332 (Nov. 7, 1979).

as to whom he or she appoints to perform the functions.[37] The court explained that only the sheriff can designate which deputies can serve as a court officer. " 'Attendance on the Court' is in the same category of powers inherent in the sheriff as is running the jail. Just as . . . the legislature cannot deprive the sheriff of control of the jail, neither can the legislature through a statute authorizing collective bargaining by the county board and a union deprive the sheriff of his authority to select who among his deputies shall act in his stead in attendance on the court."[38] The court focused on the

---

[37] These cases focused the inquiry not on the sheriff's power of appointment or the sheriff's ability to assign a task generally, but rather on the nature of the task assigned in order to assess the constitutional nature of the appointment power. *WPPA I,* 106 Wis. 2d at 312 (it is the "nature of the job assigned [to the appointee] rather than the general power of job assignment which must be analyzed in light of the sheriff's constitutional powers.").

[38] *WPPA I,* 106 Wis. 2d at 313. This case was remanded to the circuit court for a determination of the specific duties of the "court officer" in question, because they were not clear from the record. If the "court officer" did in fact attend to the courts as within the constitutional power of the office of sheriff, then only the sheriff could select these officers.

> At common law, the duties of the sheriff were four fold. He was the keeper of the king's peace within the county; he was the king's bailiff; he heard and determined certain causes of action in his judicial capacity; and finally, in his ministerial capacity, he executed all process issuing from the king's superior courts of justice. "It is one of the many duties of the sheriff to attend sessions of particular courts. . . . The responsibility of the sheriff is limited to the direction of the court. . . . When the sheriff attends the court, he attends as an officer of the court. . . . It is the duty of the sheriff to be present himself, or through a deputy and provide sufficient deputies to carry out the court's orders."
>
> . . . .

"nature of the job assigned rather than the general power of job assignment."[39]

¶ 55. The sheriff's special relationship with the courts was reinforced recently in a 2006 court of appeals decision. *Dunn County v. WERC*, 2006 WI App 120, ¶¶ 12–13, 293 Wis. 2d 637, 718 N.W.2d 138. The court of appeals held that a collective bargaining agreement cannot delegate power to the clerk of courts, with priority over the sheriff, in the scheduling, directing, and supervising of deputies serving as court security officers. This delegation of power, held the court of appeals, interferes with the sheriff's constitutional authority in attending on the courts.[40] "[T]he sheriff cannot be required to delegate to another county official the directory or supervisory authority over attendance upon the court."[41]

¶ 56. Again dealing with the sheriff's relationship to the courts, the court of appeals held in *Wisconsin Professional Police Ass'n/Law Enforcement Employee Relations Division v. Dane County*, 149 Wis. 2d 699, 712, 439 N.W.2d 625 (Ct. App. 1989) (*WPPA II*), that the sheriff's duty "to execute court-issued arrest warrants to bring before the court a prisoner" was a cardinal and

---

[A]t common law, the sheriff was an officer of the court and obliged to the court's commands. The sheriff remains today subject to the orders of the courts. We conclude that when the sheriff executes an arrest warrant issued by the court to bring a prisoner before the court the sheriff attends upon the court.

*Wis. Prof'l Police Ass'n/Law Enforcement Employee Relations Div. v. Dane County*, 149 Wis. 2d 699, 706–07, 439 N.W.2d 625 (Ct. App. 1989) (*WPPA II*) (citations omitted).

[39] *WPPA I*, 106 Wis. 2d at 312.

[40] *Dunn County v. WERC*, 2006 WI App 120, ¶¶ 12–13, 293 Wis. 2d 637, 718 N.W.2d 138.

[41] *Id.*, ¶ 14.

traditional responsibility of the sheriff, giving character to the office of sheriff. Accordingly, the court of appeals concluded that the sheriff's right to enlist the services of the U.S. Marshal for interstate conveyance of prisoners "may not be limited by a collective bargaining agreement."[42]

¶ 57. Two other powers, rights, and duties recognized and clearly accepted by the courts as within the constitutional prerogative of the office of sheriff are maintaining law and order and preserving the peace.[43] In a case involving this constitutionally protected prerogative of the office of sheriff, the court of appeals has concluded that a sheriff has the right to create a temporary mutual aid unit consisting of various law enforcement officers to address a special emergency, despite the objection of a deputy seeking overtime opportunities under the collective bargaining agreement. The court of appeals explained in *Washington County v. Washington County Deputy Sheriff's Ass'n,* 192 Wis. 2d 728, 531 N.W.2d 468 (Ct. App. 1995), that "[the sheriff's] assignment of municipal officers to patrol duty normally assigned to deputies was in the reasonable anticipation of a possible emergency situation during Harleyfest and, *in this case,* was a proper exercise of a sheriff's duty to preserve the peace . . . ."[44]

---

[42] *WPPA II,* 149 Wis. 2d at 712.

[43] *Local 986B,* 168 Wis. 2d at 830; *WPPA I,* 106 Wis. 2d at 313; *Andreski v. Indus. Comm'n,* 261 Wis. 234, 240, 52 N.W.2d 135 (1952) (a worker's compensation case involving whether the sheriff was on business so that his widow was eligible for compensation).

[44] *Washington County v. Washington County Deputy Sheriff's Ass'n,* 192 Wis. 2d 728, 741, 531 N.W.2d 468 (Ct. App. 1995) (emphasis added).

Again, the court focused on the special "nature of the job assigned rather than the general power of job assignment."[45.]

¶ 58. In another case involving the same constitutional prerogative, *Manitowoc County v. Local 986B*, 168 Wis. 2d 819, 484 N.W.2d 534 (1992), the court concluded that a sheriff had the constitutional right to assign a specially qualified deputy from patrol duty to fill a unique undercover position.[46] The court explained that "law enforcement and preserving the peace were duties which 'gave character and distinction' to the office of sheriff . . . "[47] and "undercover detective work is a contemporary method of the exercise of the sheriff's historical duties of maintaining law and order and preserving the peace."[48] The court emphasized, however, that the "legislature may still regulate the administrative and executive duties of a sheriff, and the collective bargaining agreement will still control wages, hours and conditions of employment."[49] The court expressly declared that its holding about the undercover agent is narrow and limited to the facts of the case.[50] Again, the court focused on the special "nature of the job assigned rather than the general power of job assignment."[51]

¶ 59. The court of appeals in *Dunn County v. WERC*, 2006 WI App 120, ¶ 23, 293 Wis. 2d 637,

---

[45] *WPPA I*, 106 Wis. 2d at 312.

[46] *Local 986B*, 168 Wis. 2d at 830.

[47] *Id.* at 828.

[48] *Id.* at 830.

[49] *Id.* at 831.

[50] *Id. See also Heitkemper*, 194 Wis. 2d at 192–93 (interpreting *Local 986B* narrowly).

[51] *WPPA I*, 106 Wis. 2d at 312.

718 N.W.2d 138, has explained the limited applicability of the mutual aid case and the undercover agent case. They involve, wrote the court of appeals, "very specific assignments, not day-to-day routine scheduling requirements."[52]

¶ 60. Other cases demonstrate that not all matters related to the sheriff's powers, rights, and duties to maintain law and order and to preserve the peace are constitutionally protected and within the total discretion of the sheriff. In other words, even when a task is related to a sheriff's constitutional powers, rights, and duties, like maintaining law and order, the sheriff may be subject to legislative regulation in regard to performance of that duty. The court's reasoning has been that many tasks for which a sheriff is responsible that relate to the office's constitutional powers, rights, and duties are nondistinctive, "mundane and commonplace" "internal management and administrative" duties of a sheriff. Such duties do not themselves take on constitutional dimensions and can be regulated by the legislature.

¶ 61. For example, the constitutional prerogative of the office of sheriff to maintain law and order and preserve the peace does not encompass the power to appoint or dismiss deputies.

¶ 62. The appointment and dismissal of deputies are non-distinctive internal management and administrative tasks, in contrast to the constitutional tasks previously described. Although at common law the sheriff had the power or authority to appoint deputies, the court has held that this power "was not a power or

[52] *Dunn County v. WERC*, 2006 WI App 120, ¶ 23, 293 Wis. 2d 637, 718 Wis. 2d 138.

authority that gave character and distinction to the office."[53] Thus in *State ex rel. Milwaukee County v. Buech,* 171 Wis. 474, 177 N.W. 781 (1920), the court upheld the constitutionality of a statute providing for a civil service system that included defining and limiting the sheriff's authority to hire and discharge deputies. The court reaffirmed this holding in *Heitkemper v. Wirsing,* 194 Wis. 2d 182, 533 N.W.2d 770 (1995), stating that "[w]hile internal management and administrative duties such as termination are important, they neither gave 'character' nor 'distinction' to the office of sheriff. Rather, these duties, specifically the power to dismiss, fall within the mundane and common administrative duties of a sheriff which may be regulated by the legislature."[54]

¶ 63. The sheriff is thus subject to civil service requirements in the hiring and discharging of depu-

---

[53] *Buech,* 171 Wis. at 482.

With no disposition to question the doctrine of [*State ex rel. Kennedy v. Brunst*], we do not think it should be extended to the extent here urged. We think it should be confined to those immemorial principal and important duties that characterized and distinguished the office. While at common law the sheriff possessed the power to appoint deputies, it was not a power or authority that gave character and distinction to the office. Many other officers as well as sheriffs possessed the power. It was more in the nature of a general power possessed by all officers to a more or less extent, and was not peculiar to the office of sheriff. It should not be held, in our judgment, that the constitution prohibits any legislative change in the powers, duties, functions, and liabilities of a sheriff as they existed at common law. If that were true, a constitutional amendment would be necessary in order to change the duties of sheriffs in the slightest degree, and in this respect, "the state would be stretched on a bed of Procrustes."

[54] *Heitkemper,* 194 Wis. 2d at 193.

ties.[55] A newly elected or reelected sheriff who wishes to dismiss or not to reappoint a previously appointed deputy does not possess the constitutional authority to do so. The sheriff is instead bound by the collective bargaining agreement.[56]

¶ 64. The working environment of the sheriff's office may be regulated by the legislature or may be subject to collective bargaining agreements. The court has declared: "The legislature may still regulate the administrative and executive duties of a sheriff, and the collective bargaining agreement will still control wages, hours and conditions of employment."[57]

¶ 65. Likewise, the attorney general opined that the county board may fix the number and the compensation of all deputy sheriffs, including honorary deputies, without usurping the constitutional powers of the sheriff.[58] In another opinion, the attorney general explained that the administrative aspects of the office of sheriff are not constitutional in nature, emphasizing that "the constitution does not prohibit the Legislature from exercising any control of the powers, duties, functions and liabilities of a sheriff as they existed at common law, and it may regulate many such matters, including the appointment and compensation of his deputies and other subordinates."[59]

---

[55] *Buech,* 171 Wis. at 482; *see also Brown County Sheriff's Dep't v. Brown County Sheriff's Dep't Non-supervisory Employees Ass'n,* 194 Wis. 2d 265, 273–74, 533 N.W.2d 766 (1995).

[56] *Id.* at 269.

[57] *Local 986B,* 168 Wis. 2d at 831. *See also Dunn County v. WERC,* 2006 WI App 120, ¶ 23, 293 Wis. 2d 637, 718 N.W.2d 138.

[58] 68 Op. Att'y Gen. 334, 339 (Nov. 8, 1979).

[59] 77 Op. Att'y Gen. 94, 96 (Apr. 29, 1988). *See also* 68 Op. Att'y Gen. 334, 339–40 (Nov. 8, 1979).

¶ 66. An analysis of the case law and opinions of the attorney general demonstrates that just because the office of sheriff has constitutional power over the jail and care of the inmates does not mean that every aspect of the operation of the jail or every aspect of caring for the inmates falls within the sheriff's constitutional powers. Although the sheriff traditionally may have been responsible for providing food to the inmates under his care, the constitutional inquiry does not focus exclusively on whether the sheriff was responsible for food service at common law.[60] Rather the focus in the constitutional inquiry is on whether the task of hiring and firing personnel to provide food to inmates gives distinction and character to the office of sheriff or whether the task is a mundane and commonplace internal management and administrative duty of the office.

¶ 67. The present case involves a routine assignment of the sheriff's duties related to the operation of the jail and care for inmates. Adhering to case law, we focus on the nature of the job assigned, that is, providing food, rather than the general power of job assignment.[61] The case law and the opinions of the attorney general make clear that hiring and firing personnel to provide food service, including contracting with a food service provider, is more akin to the other employment decisions that this court has previously determined to be mundane and commonplace internal management

---

[60] The attorney general opined that there might be a constitutional question whether the legislature could deprive the sheriff of the privilege of electing to feed the inmates himself or by means of the services of his wife and avoided answering the question. 40 Op. Att'y Gen. 140, 143 (May 18, 1951).

[61] *WPPA I,* 106 Wis. 2d at 312.

298

and administrative duties outside the constitutional powers, rights, and duties of the office of sheriff. Hiring and firing a food service provider is at best ancillary to the constitutional powers, rights, and duties of the office of sheriff to operate the jail and take care of the jail inmates, much like many employment decisions concerning deputies are ancillary to the powers, rights, and duties of the office of sheriff to maintain law and order and preserve the peace. The employment decision in the instant case is not similar to a sheriff's constitutional prerogative to supervise court security officers, enlist the services of the U.S. Marshal for interstate conveyance of prisoners, and assign a deputy to be a unique undercover agent.

¶ 68. Even back when sheriffs, or their wives, single-handedly prepared the food for jail inmates, the sheriff was not known as a butcher, a baker, or a meal-maker. History makes clear that the active preparation and service of food to inmates does not have a "time immemorial" nature that gives character and distinction to the office of sheriff.[62] Not all operations of a jail fall within the sheriff's constitutional prerogative; each task must be individually analyzed and assessed.

¶ 69. Thus, just as the legislature can prescribe limitations on the sheriff's power to hire or terminate deputies who maintain law and order and preserve the

---

[62] The provision of food to jail inmates bears little distinction from the provision of food to residents of other institutions, including orphanages, reform schools, state prisons, mental asylums, and poorhouses. For discussion of these other institutions, see Richard N. Current, *The History of Wisconsin, Volume II: The Civil War Era, 1848–1873,* 186–88, 190–91, 515–18 (William Fletcher Thompson ed., State Historical Society of Wisconsin 1976).

peace, so too can the legislature regulate the employment decisions for food service workers at the county jail.

¶ 70. We are persuaded our conclusion is correct by examining the consequences of adopting Sheriff Kocken's position. If we determined that hiring and firing personnel to provide food for the county jail is in fact a constitutional power of the office of sheriff merely because it is related to the sheriff's constitutional power and duty to operate the jail and care for inmates, then all mundane and commonplace internal management and administrative aspects of the operation of the jail and care of the inmates would similarly become constitutionally protected prerogatives of the sheriff, such that any changes the legislature might want to make to mundane and commonplace internal management or administrative aspects of the operation of the jail and care of inmates might require a constitutional amendment.

¶ 71. Moreover, our decision today has consequences beyond the office of sheriff. Section 4 of Article VI of the state constitution applies not only to sheriffs but also to district attorneys and other officers. A broad characterization of the immemorial and distinctive principles and characteristics of the office of sheriff could be similarly applied to other constitutional offices, further stretching the state on a bed of Procrustes.[63]

---

[63] For instance, in *Schultz v. Milwaukee County,* 245 Wis. 111, 13 N.W.2d 580 (1944), the court discussed the constitutional aspects of the office of coroner and applied the standard used for the constitutional prerogatives of the office of sheriff established in *Brunst.* The court concluded that "the holding of inquests was not such a distinctive and characteristic feature of the office of coroner at the time of the adoption of the consti-

¶ 72. In sum, hiring and firing personnel to provide food service does not fall within the constitutional powers, rights, and duties of the office of sheriff. Having concluded that the selection of a food service provider for the county jail is not within the constitutional powers and duties of the office of sheriff, we hold that the circuit court erroneously exercised its discretion in rendering judgment in favor of Sheriff Kocken. The circuit court erroneously exercised its discretion in granting the permanent injunction when it erred as a matter of law in concluding that the sheriff had constitutionally protected authority to designate a food service provider without limitation by a collective bargaining agreement entered pursuant to the Municipal Employment Relations Act.

¶ 73. Although the constitutional powers and prerogatives of the office of sheriff cannot be limited by collective bargaining agreements,[64] if a function is "not reserved to the sheriff by the Constitution, then the sheriff may be bound by the collective bargaining agreement entered into between the county and the union by virtue of the Municipal Employment Relations Act (MERA) . . . ."[65]

---

tution as to deprive the legislature of power to create another office and impose the duty to hold inquests upon it." *Schultz,* 245 Wis. at 121–22.

[64] *See Heitkemper,* 194 Wis. 2d at 193. *See also WPPA I,* 106 Wis. 2d at 314.

[65] *Id.* at 315.

The collective bargaining agreement at issue in the present case is an "Agreement Between Brown County and the Brown County Mental Health Center Employees Local 1901."

Although not a named party to the agreement, Sheriff Kocken may be bound by it. As we explained in *Brown County*

¶ 74. We need not comment further on the nature or effect of the collective bargaining agreement. That issue is not before the court. We merely conclude that hiring and firing the personnel to provide food for the Brown County jail is not within Sheriff Kocken's constitutional authority and may be limited by legislation, including the Municipal Employment Relations Act.

¶ 75. For the reasons set forth, we hold that the Sheriff's hiring and firing of personnel to provide food service to the county jail is not a "time immemorial," principal, and important duty that characterizes and distinguishes the office of sheriff, and as such, is not within the Sheriff's constitutional powers. Rather, the hiring and firing of personnel to provide food service to the county jail falls within the "mundane and commonplace" "internal management and administrative duties"[66] not protected by the constitution. Hiring and firing personnel to provide food to inmates is subject to legislative regulation, including collective bargaining under Wis. Stat. § 111.70. The circuit court erred as a matter of law when it concluded that the contract at issue is within the sheriff's constitutional prerogative. This error of law rendered the circuit court's judgment an erroneous exercise of discretion.

*Sheriff's Department,* "[t]he sheriff argues that he should not be bound to the 'agreement to arbitrate' because he is not a party to the collective bargaining agreement. However, the legislature has provided the county, not the sheriff, with the option of adopting § 59.21(8)(b), Stats. Likewise, the county can clearly choose to collectively bargain the terms of employment and suspension, demotion, and dismissal of deputy sheriffs." *Brown County Sheriff's Dep't,* 194 Wis. 2d at 275–76.

[66] *Heitkemper,* 194 Wis. 2d at 193; *Local 986B,* 168 Wis. 2d at 820.

¶ 76. Accordingly, we reverse the judgment of the circuit court and remand the cause to the circuit court to dismiss Sheriff Kocken's complaint seeking declaratory relief. We also vacate the permanent injunction. AFSCME Local 1901 is no longer restrained from pursuing its complaint filed with the Wisconsin Employment Relations Commission, pursuant to Wis. Stat. § 111.70, the Municipal Employment Relations Act.

¶ 77. *By the Court.*—The order of the circuit court is reversed and the cause remanded.

¶ 78. PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). The majority concludes that the provision of food, including the power to select a food service provider, does not fall within the constitutional powers and duties of the office of sheriff. Majority op., ¶¶ 4, 66. The majority opinion lacks our traditional constitutional analysis that is necessary to determine whether feeding the prisoners falls within the constitutional powers and duties of the sheriff. However, when undertaken, such analysis demonstrates that the constitutional powers and duties of the sheriff include the care and custody of prisoners in the county jail, which duty encompasses the duty to feed them. Accordingly, a collective bargaining agreement cannot detach from the office of sheriff those constitutional duties that the people have elected the sheriff to undertake. Because the majority opinion takes away from the office of sheriff part of its constitutional power and gives that power to those who were not elected by the people, I respectfully dissent.

## I. BACKGROUND

¶ 79. AFSCME Local 1901 (Local 1901), which represents county employees, filed a complaint in June 2004 with the Wisconsin Employment Relations Com-

303

mission (WERC) against Brown County, in regard to the means by which the Brown County Sheriff, Dennis Kocken, chose to provide meals to jail prisoners. The complaint alleged that Brown County had committed a prohibited labor practice in violation of Wis. Stat. § 111.70(3)(a) (2003–04),[1] because it refused to bargain with Local 1901 on Sheriff Kocken's decision to subcontract the provision of meals for jail prisoners.

¶ 80. Sheriff Kocken had contracted with a private party, Aramark, to provide meals to jail prisoners. According to Sheriff Kocken, his decision was intricately related to many aspects of running the jail. He explained it would save Brown County $1,000,000, provide food-service training for jail prisoners, improve prisoner morale and improve jail safety.

¶ 81. Prior to 2001, food for jail prisoners was provided by the Brown County Sheriff's Department employees. They were not members of Local 1901, and they were assisted in meal preparation by jail prisoners. In 2001, in anticipation of county construction projects, the Brown County Sheriff decided to consolidate food service for the jail with that for the County Mental Health Center and the County Work Release Center. As a result of this food preparation consolidation, Local 1901 became the bargaining unit for the food service providers and prisoner involvement in food preparation was discontinued.

¶ 82. When the anticipated construction, for which the food service was consolidated, did not occur, Sheriff Kocken decided to employ Aramark to provide prisoner meals because doing so would save Brown County $1,000,000, and Aramark would train and uti-

---

[1] All further references to the Wisconsin Statutes are to the 2003–04 version, unless otherwise noted.

304

lize the services of jail prisoners in food preparation. The prisoners also would receive sentence credit for the hours worked, which would increase prisoner morale and jail safety. It is this entire program that Local 1901's complaint affects.

## II. DISCUSSION

### A. Standard of Review

¶ 83. This case involves a question of constitutional interpretation that we review independently. *Schilling v. Crime Victims Rights Board,* 2005 WI 17, ¶ 12, 278 Wis. 2d 216, 692 N.W.2d 623.

### B. Wisconsin Constitution, Article VI, Section 4

¶ 84. The constitutional provisions that relate to sheriffs are contained within Article VI, Section 4 of the Wisconsin Constitution. It provides in relevant part:

> [S]heriffs shall be chosen by the electors of the respective counties . . . for the term of 4 years. . . . Sheriffs may not hold any other partisan office. . . . Sheriffs may be required by law to renew their security from time to time, and in default of giving such new security their office shall be deemed vacant. . . . The governor may remove any [sheriff] . . . giving to [the sheriff] . . . a copy of the charges and an opportunity of being heard. . . . When a vacancy occurs in the office of sheriff, the vacancy shall be filled by appointment of the governor, and the person appointed shall serve until his or her successor is elected and qualified.

¶ 85. When we interpret the Wisconsin Constitution, we do so to give effect to the "intent of the framers and of the people who adopted it." *Schilling,* 278

305

Wis. 2d 216, ¶ 13 (citations omitted). In so doing under our traditional constitutional analysis,[2] we examine three sources: the plain meaning of the words, in context; the practices as they existed at the time the constitution was written; and the earliest interpretations of the constitutional provision under consideration. *Wis. Citizens Concerned for Cranes & Doves v. DNR,* 2004 WI 40, ¶ 44, 270 Wis. 2d 318, 677 N.W.2d 612 (citations omitted).

¶ 86. The constitutional directives that apply to the office of sheriff provide for the election of sheriffs and fix the term of office, but they do not describe the constitutional powers and duties of that office. Because of this lack of specificity, questions in regard to sheriffs' powers and duties have been addressed by Wisconsin courts for more than 100 years. *See State ex rel. Kennedy v. Brunst,* 26 Wis. 412 (1870).

¶ 87. In *Brunst,* the inspector of the Milwaukee house of correction sought a writ to direct the Milwaukee County Sheriff to turn over all prisoners confined to the jail. The inspector based his demand on an 1870

---

[2] The majority opinion claims that its analysis is "traditional." Majority op., ¶ 43. However, it is only talking the talk, not walking the walk. The majority opinion does not analyze and rely on the powers and duties of the sheriff as they existed at the time the constitution was ratified or the earliest interpretations of the constitutional provision at issue, as we did in *Wisconsin Citizens Concerned for Cranes & Doves v. DNR,* 2004 WI 40, ¶ 44, 270 Wis. 2d 318, 677 N.W.2d 612; *State v. Cole,* 2003 WI 112, ¶ 10, 264 Wis. 2d 520, 665 N.W.2d 328; and *Thompson v. Craney,* 199 Wis. 2d 674, 680, 546 N.W.2d 123 (1996). It mentions *State ex rel. Kennedy v. Brunst,* 26 Wis. 412 (1870), the earliest interpretation of the constitutional powers and duties of the sheriff, but it ignores its conclusions, as it does the powers and duties of the sheriff at the time the Wisconsin Constitution was ratified.

statute that named the house of correction as the county jail and the inspector as the jailor, ex officio. *Id.* at 413. The sheriff refused to comply with the demand, claiming that the care and custody of the prisoners of the jail were "duties from time immemorial belonging to [the office of sheriff]." *Id.* We reasoned that the framers of the constitution "had reference to the office [of sheriff] with those generally recognized legal duties and functions belonging to it in this country, and in the territory, when the constitution was adopted." *Id.* at 414. Important to our decision was the following rationale:

> It would certainly be a very idle provision of the constitution, to secure to the electors the right to choose their sheriffs, and at the same time leave to the legislature the power to detach from the office of sheriff all the duties and functions by law belonging to that office when the constitution was adopted, and commit those duties to some officer not elected by the people. For this would be to secure to the electors the right to choose a sheriff in name merely, while all the duties and substance of the office might be exercised by and belong to an officer appointed by some other authority.

*Id.* at 414–15.

¶ 88. Based on the common law legal duties and functions of a sheriff in 1848 when the Wisconsin Constitution was ratified, we concluded that it was constitutionally impermissible to grant to another the common law functions and duties of the sheriff. *Id.* at 415. Therefore, the legislature was without power to detach from the office of sheriff those powers and duties a sheriff held at common law. Because our decision in *Brunst* was issued only 22 years after the Wisconsin Constitution was ratified and is the earliest interpretation of the constitutional provisions relating to the

sheriff, its reasoning is the foundation of all subsequent opinions that have addressed the constitutional powers and duties of sheriffs.[3]

¶ 89. *Brunst* identified the sheriff's constitutional powers and duties at the time the constitution was ratified. They include: (1) having custody and the care of the jail and the prisoners therein; (2) preservation of the public peace; (3) execution of writs and other service of the courts. *Id.* at 413–14. Our reasoning in *Brunst* about the scope of the common law powers and duties of a sheriff and how we identified those same powers and duties as the constitutional powers and duties of a sheriff when the Wisconsin Constitution was ratified is important to understanding the issues presented for our review in the case before us. Our analysis in *Brunst* is the traditional, constitutional analysis that we have continued to use for more than 100 years to determine the meaning of a constitutional provision.[4] *Brunst's* analysis also is cited in the well-respected treatise, Walter H. Anderson, *Anderson on Sheriffs, Coroners and Constables* 37 (Dennis & Co., Inc. 1941), which concurs in our analysis.

¶ 90. As has been explained in learned treatises that examine the office of sheriff, the common law powers and duties that the sheriff held also included "the powers necessary for their performance." William L. Murfree, Sr., *Law of Sheriffs and Other Ministerial Officers* 21 (2d ed. 1890). Accordingly, if a sheriff had a

---

[3] I note that "[t]he position of sheriff is one of great antiquity and honor. He was the deputy of the king in his shire and was accountable to no one but the king." *Andreski v. Indus. Comm'n,* 261 Wis. 234, 239, 52 N.W.2d 135 (1952).

[4] *See Dunn County v. WERC,* 2006 WI App 120, ¶ 10, 293 Wis. 2d 637, 718 N.W.2d 138.

particular duty at common law, such as the care of the prisoners, he also had all of the powers necessary to perform that duty.

¶ 91. In *State ex rel. Milwaukee County v. Buech,* 171 Wis. 474, 177 N.W. 781 (1920), we again construed the constitutional powers and duties of a sheriff. We addressed the question of whether a sheriff's dismissal of a deputy could be regulated by the legislature through the civil service laws or whether the constitution prohibited that regulation. *Id.* at 476. In our review of the question presented, we did not use the terms "constitutional duties and functions" as we had in *Brunst.* Instead, we described the sheriff's common law "duties" that were constitutionally based as those "immemorial principal and important duties that characterized and distinguished the office." *Id.* at 482. We opined that while at common law the sheriff possessed the general power to appoint deputies, such power was not "peculiar to the office of sheriff" because many other officers also had a general power of appointment. *Id.* Many other public officers also had the power to fire employees, so that firing employees was not a task "peculiar to the office of sheriff." However, we specifically avoided determining whether the sheriff had been deprived of a constitutional power of appointment of deputies by legislative action because we determined that the civil service laws that governed the qualification of deputies were only a reasonable regulation upon the sheriff's power. *Id.* at 482–83.

¶ 92. In *Wisconsin Professional Police Ass'n (WPPA) v. County of Dane,* 106 Wis. 2d 303, 316 N.W.2d 656 (1982) (*WPPA I*), we addressed whether a collective bargaining agreement between Dane County and the Teamsters Union Local 695 could limit the person whom the sheriff could select as a "court officer" to

309

attend upon the courts on behalf of the sheriff. *Id.* at 305. We concluded that while a collective bargaining agreement authorized by the legislature may limit a sheriff's power that is purely statutory, "it provides no basis for so limiting the powers and duties of the sheriff which are based upon his constitutional status." *Id.* at 319.

¶ 93. We also explained in *WPPA I* that when analyzing whether a particular power is constitutionally grounded, we examine *"the nature of the job assigned rather than the general power of job assignment."* *Id.* at 312 (emphasis added). This explanation distinguished our *WPPA I* analysis from that which we used in *Buech* because in *Buech* we focused on a general power, rather than on the assignment of a specific job.

¶ 94. In *WPPA I,* we determined that " 'Attendance on the Court' is in the same category of powers inherent in the sheriff as is running the jail." *Id.* at 313. It is "among the principal and important duties which characterized the office of sheriff so that the sheriff may not be restricted as to whom he appoints." *Id.* at 312. When a power of the sheriff is bottomed in the sheriff's constitutional authority, a "collective bargaining by the county board and a union [cannot] deprive the sheriff of his authority." *Id.* at 313.

¶ 95. In *Wisconsin Professional Police Ass'n v. Dane County,* 149 Wis. 2d 699, 439 N.W.2d 625 (Ct. App. 1989) (*WPPA II*), the court of appeals addressed another union complaint against a sheriff. In *WPPA II,* the union claimed that the sheriff had violated the collective bargaining agreement with the county by contracting with the U.S. Marshal's Service for the interstate conveyance of prisoners, rather than assigning a union member to the task. *Id.* at 702–03. The sheriff contended that it cost less to transport prisoners with the

U.S. Marshal's Service than it did using bargaining unit members, and because prisoner transportation was within his constitutional power to attend upon the courts, his choice of how to complete that task could not be changed by a collective bargaining agreement. *Id.*

¶ 96. As it began its analysis, the court of appeals pointed out that a court should focus on "the nature of the sheriff's duty in light of the sheriff's constitutional powers . . . not the way in which the sheriff carries out the duty." *Id.* at 701. The court explained that one of the sheriff's constitutional duties was attending upon the court. *Id.* at 707. The court of appeals said that when a sheriff transports a prisoner in execution of an arrest warrant issued by the court, he is performing part of that constitutional duty. *Id.* Because the duty of attending upon the court was a duty that "characterized and distinguished the office of sheriff at common law, the sheriff 'chooses his own ways and means of performing it.' " *Id.* at 710 (citing *WPPA I,* 106 Wis. 2d at 314 (quoting *Andreski v. Indus. Comm'n,* 261 Wis. 234, 240, 52 N.W.2d 135 (1952)).

¶ 97. In *Manitowoc County v. Local 986B,* 168 Wis. 2d 819, 484 N.W.2d 534 (1992), Local 986B complained that the sheriff had violated a collective bargaining agreement by assigning an officer as an undercover drug agent without posting the position. We concluded that the sheriff was operating within his constitutional authority to preserve the peace when he made the appointment. *Id.* at 828. We explained that keeping the peace was one of the "immemorial principal and important duties" of the sheriff at common law, but it was not necessary that such a duty also be "unique" to the office of sheriff. *Id.* We explained that there "is no reason why the constitution should protect only those

311

traditional duties which were 'unique' to the office of sheriff at common law." *Id.* at 829.

¶ 98. We said that "[c]itizens of a county have a right to elect a sheriff to perform certain traditional duties regardless of who else may also have performed them at common law." *Id.* at 824. This reasoning, bottomed on the right of the electors to choose a sheriff who will carry out duties and perform functions traditional to the office of sheriff, was the foundation of our first interpretation of the constitutional role of the sheriff. *See Brunst,* 26 Wis. at 415 (explaining that it would be a hollow constitutional right if the electors could choose a sheriff, but could not have him perform his traditional duties and functions, as that would be electing a sheriff in name only).

¶ 99. In *Washington County v. Washington County Deputy Sheriff's Ass'n,* 192 Wis. 2d 728, 531 N.W.2d 468 (Ct. App. 1995), the court of appeals analyzed whether the sheriff had the constitutional power to utilize non-bargaining unit law enforcement personnel to help maintain law and order in anticipation of a public event that the sheriff anticipated would draw large numbers of people into Washington County. The court of appeals began by noting that maintaining law and order was a historic duty of the sheriff. *Id.* at 738. The court then used the same test as it had in *WPPA II:* If the nature of the job assigned was for the purpose of law enforcement and preserving the peace, then the sheriff had the constitutional power to choose the "ways and means of performing those duties." *Id.* at 738–39.

¶ 100. On June 26, 1995, we decided two cases that addressed the issue of the sheriff's constitutional powers: *Heitkemper v. Wirsing,* 194 Wis. 2d 182, 533 N.W.2d 770 (1995) and *Brown County Sheriff's Dep't v. Brown County Sheriff's Dep't Non-supervisory Employ-*

*ees Ass'n,* 194 Wis. 2d 265, 533 N.W.2d 766 (1995). Both cases address firing a deputy who had served in a sheriff's department for many years. Each case specifically pointed out that it did not address the sheriff's power to appoint a deputy who previously had not been hired by the sheriff. *Heitkemper,* 194 Wis. 2d at 185 (concluding that "the issue in this case is not whether a collective bargaining agreement can usurp [the sheriff's] power to appoint a deputy"); *Brown County,* 194 Wis. 2d at 269 (concluding that the issue is whether the sheriff's constitutional power extends to the "power to dismiss or not to reappoint a previously appointed deputy"). It is important to note that neither *Heitkemper* nor *Brown County* turned on, or addressed, the constitutional power of a sheriff to decide *how to perform tasks* undertaken within the scope of one of the sheriff's constitutional duties. Both cases focused only on the general power to terminate an employee, a power that did not distinguish the office of sheriff at common law.

¶ 101. In the most recent appellate decision addressing the constitutional powers of a sheriff, *Dunn County v. WERC,* 2006 WI App 120, 293 Wis. 2d 637, 718 N.W.2d 138, the court of appeals reviewed several provisions in a collective bargaining agreement upon the complaint of the sheriff that the provisions were illegal on their face because they violated the constitutional powers of the office of sheriff. *Id.,* ¶ 3. In analyzing the claims of the sheriff, the court of appeals applied the same two-part test we began in *WPPA I* and the court of appeals continued in *WPPA II.* It first analyzed whether the duty impacted by the collective bargaining provision was one of the "immemorial principal and important duties that characterized and distinguished the office of sheriff at common law." *Id.,*

¶ 10 (citation omitted). If it was, then "the sheriff may choose the ways and means of performing the duty and [the sheriff's choice] cannot be limited by a collective bargaining agreement." *Id.*

¶ 102. One of the contract provisions directed who would be a court security officer and provided that the sheriff must "delegate" his power to schedule that person to the clerk of courts. *Id.,* ¶ 3. In applying the test it had recited, the court of appeals first noted that attending upon the court was a constitutional duty of the sheriff. *Id.,* ¶ 13. Therefore, the sheriff has the constitutional power to choose the "ways and means" of performing that duty. *Id.* Citing our decision in *Manitowoc County,* the court of appeals pointed out that "[w]hen performing his common law duties, the sheriff 'represents the sovereignty of the State and he has no superiors in his county.'" *Id.,* ¶ 14 (quoting *Manitowoc County,* 168 Wis. 2d at 827). Accordingly, the court of appeals concluded that the collective bargaining agreement could not affect whom or how the sheriff selected the court security officers. *Id.,* ¶ 15.

¶ 103. When all the above cited cases are considered together, it becomes apparent there are two types of cases that address the constitutional powers and duties of the sheriff: (1) those *involving the sheriff's choice about how to perform a specific task* within the ambit of one of the sheriff's constitutional duties when another entity is attempting to change the sheriff's choice[5] and (2) those dealing with *a general power*

---

[5] *See Kennedy,* 26 Wis. 412 (1870) (location of jail's prisoners is within the sheriff's constitutional duty to provide for the care and custody of the jail's prisoners); *Wis. Prof'l Police Ass'n (WPPA) v. County of Dane,* 106 Wis. 2d 303, 316 N.W.2d 656 (1982) (*WPPA I*) (sheriff's selection of a court officer falls within his constitutional duty to attend upon the court); *Wis. Prof'l*

*possessed by other elected officials,* such as the power to dismiss a previously appointed employee.[6]

¶ 104. In the case before us, Sheriff Kocken contends that the choice of the means by which to feed the prisoners in the county jail is embraced within his constitutional power and duty to care for and have custody of jail prisoners. He asserts that at common law no other person had the duty to care for and have custody of the prisoners. He explains that his choice of the means by which to provide meals to prisoners is interwoven with other aspects of running the jail. For example, the choice Sheriff Kocken made in how to perform his duty to feed the jail prisoners will save the people of Brown County $1,000,000. It will provide training to the prisoners in food preparation; it will give sentence credit to participating prisoners, thereby moving them out of institutional care more rapidly; and it will improve prisoner morale, which impacts jail safety.

*Police Ass'n v. Dane County,* 149 Wis. 2d 699, 439 N.W.2d 625 (Ct. App. 1989) (*WPPA II*) (task of interstate transport of prisoners by U.S. Marshal's Service is within the sheriff's constitutional duty to attend upon the court); *Manitowoc County v. Local 986B,* 168 Wis. 2d 819, 484 N.W.2d 534 (1992) (sheriff's choice of whom to assign as undercover drug agent was embraced within the sheriff's constitutional duty to preserve the peace); and *Dunn County,* 293 Wis. 2d 637 (sheriff's choice of whom to assign as court security officer was within the scope of sheriff's constitutional duty to attend upon the court).

[6] *See State ex rel. Milwaukee County v. Buech,* 171 Wis. 474, 177 N.W. 781 (1920) (civil service commission could regulate the general power to dismiss a deputy); *Heitkemper v. Wirsing,* 194 Wis. 2d 182, 533 N.W.2d 770 (1995) (union's contract could affect under what conditions a sheriff could dismiss a deputy) and *Brown County Sheriff's Dep't v. Brown County Sheriff's Dep't Non-supervisory Employees Ass'n,* 194 Wis. 2d 265, 533 N.W.2d 766 (1995) (union's contract could affect the conditions under which dismissal of a deputy would be sustained).

¶ 105. I agree with Sheriff Kocken's position. His position is consistent with the constitutional analysis we have employed since 1870, beginning with our decision in *Brunst*. It is beyond question that the sheriff has the constitutional power and duty to run the jail. Operation of the jail and the care and custody of the prisoners therein have been immemorial principal and important duties that have characterized and distinguished the office of sheriff since 1848 when the Wisconsin Constitution was ratified. No other person had those duties at common law. *Brunst*, 26 Wis. at 415. It should be self-evident that no sheriff can "care for" a person who is in his custody in a locked facility without feeding him.

¶ 106. Accordingly, the nature of the job assigned, feeding the jail prisoners, falls squarely within the sheriff's constitutional power to care for the prisoners. It does so in the same way as: (1) the sheriff's choice to hire the U.S. Marshal's Service for interstate transportation of prisoners comes within the sheriff's constitutional duty to attend upon the courts;[7] (2) the sheriff's choice to hire non-bargaining unit personnel to help police a large event comes within the sheriff's constitutional power to maintain the public peace;[8] and (3) the sheriff's choosing an undercover drug agent without posting the position comes within the sheriff's duty to maintain the peace.[9]

¶ 107. The Brown County Sheriff has chosen the "ways and means" of feeding the prisoners, and no collective bargaining agreement can deprive the sheriff

---

[7] *WPPA II,* 149 Wis. 2d at 701.

[8] *Washington County v. Washington County Deputy Sheriff's Ass'n,* 192 Wis. 2d 728, 738–39, 531 N.W.2d 468 (Ct. App. 1995).

[9] *Manitowoc County,* 168 Wis. 2d at 829.

of his constitutional authority to make this choice. *Manitowoc County,* 168 Wis. 2d at 828–30 (concluding that the sheriff's assignment of an undercover agent without posting the position could not be affected by a collective bargaining agreement because the assignment was part of the sheriff's constitutional power and duty to keep the peace); *WPPA I,* 106 Wis. 2d at 312–15 (concluding that when analyzing whether a particular duty is constitutionally grounded, we look at the nature of the job assigned rather than the general power of job assignment and if the nature of the job was within the power and duty of the sheriff at common law, the sheriff's choice cannot be affected by a collective bargaining agreement); *Brunst,* 26 Wis. at 414–15 (concluding that it is constitutionally impermissible to separate from the office of sheriff the duties the sheriff held at common law); *Dunn County,* 293 Wis. 2d 637, ¶¶ 10–14 (concluding that the sheriff's power to decide who will be the court security officer was within the sheriff's constitutional duty to attend upon the court and therefore it could not be affected by a collective bargaining agreement); *Washington County,* 192 Wis. 2d at 738–39 (concluding that the sheriff's choice of method by which to fulfill his duty to maintain the peace at a public event could not be affected by a collective bargaining agreement); *WPPA II,* 149 Wis. 2d at 701–03 (concluding that the sheriff's decision about using the U.S. Marshall's Service for the interstate conveyance of prisoners in order to save money for the county was within the sheriff's constitutional power to attend upon the courts so that it could not be changed by a collective bargaining agreement).

¶ 108. The majority opinion is a significant departure from precedent both procedurally and substantively. Procedurally, it does not apply the analysis we have utilized for more than 100 years in addressing the

317

constitutional powers and duties of the sheriff. It merely concludes that the sheriff's choice of how to feed the jail prisoners' is simply a hiring and firing of personnel. Majority op., ¶ 4. It characterizes the feeding of jail prisoners as "mundane and commonplace" and therefore outside of the sheriff's constitutional powers and duties. *Id.* However, that conclusion ignores our precedent. We have already concluded that the constitution preserves to the office of sheriff those duties that were traditionally performed by the sheriff even if they were not uniquely preformed by the sheriff. *Manitowoc County,* 168 Wis. 2d at 829 (concluding that there "is no reason why the constitution should protect only those traditional duties which were 'unique' to the office of sheriff at common law"). And even if one were to assume that the task under review could be accurately described as "mundane," that description does not cause it to be excluded from the constitutional duty of the sheriff to "care for" jail prisoners. At common law, it was the sheriff who was responsible for feeding the jail prisoners.

¶ 109. The majority opinion's discarding of our traditional constitutional analysis when faced with the question of whether a job falls within the constitutional powers and duties of the sheriff permits the majority opinion to reach a substantive result that is contrary to the constitutional powers and duties of the sheriff as explained in multiple cases. That is, the majority opinion ignores our repeated teaching that if the job falls within the scope of a constitutional power and duty of the sheriff at common law, the sheriff's choice about to how to perform that job cannot be regulated by a collective bargaining agreement.[10]

---

[10] *Manitowoc County,* 168 Wis. 2d at 829; *WPPA I,* 106 Wis. 2d at 312; *Brunst,* 26 Wis. at 415; *Dunn County,,*

¶ 110. The majority opinion removes from the sheriff the power to perform certain constitutional duties that the people of Wisconsin elected sheriffs to perform. In so doing, the majority opinion transfers portions of the sheriff's constitutional power to non-elected union representatives and members of the WERC, who are not subject to review by the electorate.

¶ 111. From our first consideration of the constitutional powers of the sheriff, we stressed how important it was not to remove from the office of sheriff the duties that the people had elected the sheriff to perform. We explained that were we to do so, we would:

> secure to the electors the right to choose a sheriff in name merely, while all the duties and substance of the office might be exercised by and belong to an officer appointed by some other authority.

*Brunst,* 26 Wis. at 415. The majority opinion permits non-elected persons to direct the sheriff on the ways and means the sheriff can employ in fulfilling his constitutional duty to run the jail and care for the prisoners. This impairs the rights of the electorate, as well as those of the sheriff.

## III. CONCLUSION

¶ 112. Therefore, because the majority opinion overturns more than 100 years of precedent and in so doing removes from the sheriff a duty the people of Wisconsin elected the sheriff to perform, I respectfully dissent.

293 Wis. 2d 637, ¶¶ 10–11; *Washington County,* 192 Wis. 2d at 738–39; *WPPA II,* 149 Wis. 2d at 701.

¶ 113. I am authorized to state that Justices JON P. WILCOX and DAVID T. PROSSER join this dissent.