SHIRLEY S. ABRAHAMSON, J.
f 80. (concurring). I conclude, as do the lead opinion (which represents the views of only Justice Gableman) and Justice Prosser's concurrence, that 2011 Wis. Act 21, which *498 altered the process of administrative rulemaking,[1] is unconstitutional as applied to the Superintendent of Public Instruction and the Department of Public Instruction. As a result, I concur in the mandate affirming the court of appeals.
¶ 81. Two reasons prevent me from joining both the lead opinion and Justice Prosser's concurrence.
¶ 82. First, both Justice Gableman's lead opinion and Justice Prosser's concurrence give short shrift to Thompson v. Craney, 199 Wis. 2d 674, 678, 546 N.W.2d 123 (1996). Thompson has stood for 20 years as the seminal case interpreting Article X, Section 1 of the Wisconsin Constitution, which vests "the supervision of public instruction" in the superintendent. "This court follows the doctrine of stare decisis scrupulously because of our abiding respect for the rule of law."[2]
f 83. In Thompson, this court unanimously held that 1995 Wis. Act 27 was unconstitutional. Act 27 substantially reorganized the roles of the superintendent and Department of Public Instruction and entrusted many of the powers of the superintendent to appointed "other officers" who were not subordinate to the superintendent. Thompson held that "the legislature may not give equal or superior authority to any 'other officer.' "[3]
*499 ¶ 84. Although 2011 Wis. Act 21 does change the role of the superintendent somewhat differently than did 1995 Wis. Act 27, the effect of both laws is the same — both laws give "equal or superior authority" over the supervision of public instruction to officers other than those inferior to the superintendent.[4]
1 85. I agree with the court of appeals that, under Thompson, rulemaking is part of the " supervision of public instruction," which Article X, Section 1 vests in the superintendent.[5] Likewise, I agree with the court of appeals that, under Thompson, 2011 Wis. Act 21 is unconstitutional because it grants the governor (and the Secretary of the Department of Administration) an unchecked veto power over the superintendent's rulemaking powers, thereby making the superintendent subordinate to the governor (and the Secretary) in the supervision of public instruction.[6]
f 86. I write to reaffirm Thompson and, applying its rationale, conclude that 2011 Wis. Act 21 is unconstitutional as applied to the superintendent and the Department of Public Instruction.
¶ 87. Second, I disagree with the lead opinion's unnecessary and overly broad assertion that "the Legislature may give, may not give, and may take away the powers and duties of the [superintendent] and the other officers of supervision of public instruction. If the *500 Legislature does not believe the [superintendent] should engage in rulemaking, it is free to change the statutory scheme . . . ."[7]
¶ 88. If the legislature may, as the lead opinion suggests, "take away the powers and duties" of the superintendent, then the superintendent could be reduced to a role the framers of our constitution expressly rejected — that of a mere advocate for public education, unable to set standards or bring uniformity to Wisconsin's public education system.
¶ 89. The instant case, like Thompson, "does not require us to decide the extent to which the [superintendent's] powers may be reduced by the legislature . . . ,"[8] As a result, we, like the Thompson court, should reserve judgment on that issue.
¶ 90. Justice Prosser's concurrence explains that "the very nature of the office of superintendent required the ability to make rules, irrespective of a specific grant of authority from the legislature,"[9] and that the superintendent "must possess some inherent authority to proceed to fulfill its responsibilities."[10]
f 91. This explanation is based on our interpretive tools: the plain meaning of the words in the constitution in the context used (considering "not alone . . . the words of any part of the instrument, but by ascertaining the general purpose of the whole"[11]); *501 the constitutional debates; the earliest legislative enactment interpreting the constitutional provision;[12] and judicial interpretation of the constitutional provision.[13] These tools of constitutional interpretation confirm that the superintendent "was intended as a crucial position, distinct from the 'other officers,' and possessing the ability to do more than merely act as an advocate for education."[14]
¶ 92. For the reasons set forth, I concur and write separately.
hH
¶ 93. First, I agree with the court of appeals' conclusion that, adhering to Thompson v. Craney, 199 Wis. 2d 674, 546 N.W.2d 123 (1996), 2011 Wis. Act 21 unconstitutionally infringes on the "supervision of public instruction" vested in the superintendent by Article X, Section 1 of the Wisconsin Constitution.
f 94. Article X, Section 1 currently reads as follows:
*502 The supervision of public instruction shall be vested in a state superintendent and such other officers as the legislature shall direct; and their qualifications, powers, duties and compensation shall be prescribed by law. The state superintendent shall be chosen by the qualified electors of the state at the same time and in the same manner as members of the supreme court, and shall hold office for 4 years from the succeeding first Monday in July. The term of office, time and manner of electing or appointing all other officers of supervision of public instruction shall be fixed by law.
¶ 95. In Thompson, the court addressed the constitutionality of 1995 Wis. Act 27.[15] Among other things, 1995 Wis. Act 27 created a new state Department of Education, Education Commission, and Secretary of Education appointed by the governor. Under 1995 Wis. Act 27, the Secretary of Education and the Education Commission (chaired by the superintendent of public instruction but made up of members appointed by the governor and legislative leaders) were to be responsible for "many functions related to education in Wisconsin, including some of the former duties of the [superintendent] . . . ,"[16]
¶ 96. Craney, the respondent in Thompson, argued that 1995 Wis. Act 27 violated Article X, Section 1 of the Wisconsin Constitution by stripping the superintendent of powers of supervision of public instruction and vesting those powers in "other officers" not subordinate to the superintendent. The court unanimously agreed.[17]
*503 f 97. In analyzing the constitutionality of 1995 Wis. Act 27, the Thompson court reviewed the text, history, judicial interpretations, and purpose of Article X, Section 1, and held that 1995 Wis. Act 27 was unconstitutional because it gave "the former powers of the elected state Superintendent of Public Instruction to appointed 'other officers' at the state level who are not subordinate to the superintendent."[18]
| 98. The Thompson court's holding that "the legislature may not give equal or superior authority to any "other officer" was based on grounds that are relevant to the instant case. In particular:
(1) "The debates at the 1846 and 1847-48 Wisconsin constitutional conventions show that the drafters of the Wisconsin Constitution intended the public schools to be under the supervision of the [superintendent], and that the [superintendent] was to be an elected, not appointed, public official." Thompson, 199 Wis. 2d at 685.
(2) The Thompson court noted "two consistent themes from these statements of the delegates: first, that the system of education required uniformity; second, that the SPI [superintendent of public instruction] was to provide this uniformity in an active manner by implementing the system of education." Thompson, 199 Wis. 2d at 688-89.
(3) The framers of the Wisconsin Constitution considered and explicitly rejected a proposal to select a superintendent by gubernatorial *504 appointment and a proposal that would have allowed the legislature to vest "the supervision of public instruction ... in such officers as shall hereafter be created by law." Thompson, 199 Wis. 2d at 685-86. Simply put, the framers viewed the superintendent as "indispen-sible," "the foundation, the life of progressive education" who "alone c[ould] give uniformity, energy, and efficiency to the system." Journal of the Convention, reprinted in The Convention of 1846, at 568, 570-71 (Milo M. Quaife ed. 1919).
¶ 99. In the instant case, the court of appeals relied on Thompson in concluding that rulemaking is a supervisory power of the superintendent and that 2011 Wis. Act 21 unconstitutionally gives the governor and the secretary of the Department of Administration the unchecked authority to block rulemaking by the superintendent.[19]
¶ 100. I agree with the court of appeals' reliance on Thompson in concluding that 2011 Wis. Act 21 is unconstitutional. Although 2011 Wis. Act 21 does change the role of the superintendent somewhat differently than did 1995 Wis. Act 27, the effect of both laws is the same — both laws give "equal or superior authority" over the supervision of public instruction to officers other than those inferior to the superintendent.[20] Thus, 2011 Wis. Act 21 is unconstitutional; it gives "equal or superior authority [over the supervision of public instruction] to . . . '[an]other officer.' "[21]
*505 ¶ 101. The lead opinion declares that Thompson's examination of Article X, Section 1 is instructive but not dispositive because Thompson and the instant case pose different constitutional questions.[22]
¶ 102. In Thompson, according to the lead opinion, the question presented was whether other officers of public instruction could constitutionally be given equal or greater authority than the superintendent over the supervision of public instruction.[23] The lead opinion describes the question presented in the instant case as whether the supervision of public instruction may be vested in any officers the legislature chooses, including constitutional officers like the governor, whose offices were not created to supervise public instruction.[24]
¶ 103. The lead opinion's distinction of Thompson is without a difference. It is not persuasive. Like the court of appeals, I conclude that Thompson is on point and controls the instant case: Thompson determines the superiority of the constitutional office of superintendent over all officers in the supervision of public instruction.
¶ 104. Justice Prosser's concurrence (¶ 159) essentially argues that Thompson was wrongly decided because it disregarded the plain language of the constitution, the discussion surrounding the adoption of the 1902 amendment to Article X, Section 1, and subsequent legislation.
¶ 105. Justice Prosser's concurrence (¶ 168) disagrees with the Thompson court because it "in *506 effect. . . preclude [s] serious changes in the present system without a constitutional amendment." Justice Prosser's concurrence (¶ 169) would allow constructive legislative changes regarding the superintendent of public instruction but would preclude the changes in Act 21 because they "are not constructive changes because they reallocate power without requiring accountability. Governing entails more than saying 'no.' "
¶ 106. I agree with Justice Prosser's ultimate conclusion that Act 21 is unconstitutional as applied to the superintendent of public instruction. I disagree, however, with Justice Prosser's treatment of Thompson.
HH I — I
¶ 107. Second, I caution the reader that, like Thompson, the instant case "does not require us to decide the extent to which [the superintendent of public instruction's] powers may be reduced by the legislature . . . ."[25] Thus our opinions should be read as "reserv[ing] judgment on that issue."[26]
f 108. Nevertheless, the lead opinion and the dissents unnecessarily suggest that "the Legislature may give, may not give, and may take away the powers and duties of the [superintendent] and the other officers of supervision of public instruction. If *507 the Legislature does not believe the [superintendent] should engage in rulemaking, it is free to change the statutory scheme . . . ."[27]
f 109. I do not believe it is necessary in the instant case to address or resolve the extent of the legislature's control over the superintendent's powers. The instant case concerns the constitutional relationship between the superintendent and the governor and executive branch officials. If legislative control were an issue in the instant case, however, I would agree with Justice Prosser's concurrence that the superintendent, as a constitutional officer, "must possess some inherent authority to proceed to fulfill its responsibilities."[28] "The very nature of the office of superintendent required the ability to make rules, irrespective of a specific grant of authority from the legislature."[29]
¶ 110. The superintendent is a constitutional officer. The office was created by Article X of the Wisconsin Constitution. Article X is entitled "Education." By addressing education and vesting the supervision of public instruction in an independent constitutional officer, the framers of the Wisconsin Constitution set education and the superintendent apart from other *508 constitutional officers, such as, for example, the governor and lieutenant governor (Article V); the secretary of state, treasurer, attorney general, sheriffs, coroners, registers of deeds, and district attorneys (Article VI); the legislature (Article IV); and the judiciary (Article VII).
f 111. Article X, Section 1 vests the supervision of public instruction in a state superintendent as follows:
The supervision of public instruction shall be vested in a state superintendent and such other officers as the legislature shall direct; and their qualifications, powers, duties and compensation shall be prescribed by law. The state superintendent shall be chosen by the qualified electors of the state at the same time and in the same manner as members of the supreme court, and shall hold office for 4 years from the succeeding first Monday in July. The term of office, time and manner of electing or appointing all other officers of supervision of public instruction shall be fixed by law.
f 112. The original version of Article X, Section 1 included in the 1848 Wisconsin Constitution provided as follows:
The supervision of public instruction shall be vested in a state superintendent, and such other officers as the legislature shall direct. The state superintendent shall be chosen by the qualified electors of the state, in such manner as the legislature shall provide; his powers, duties, and compensation shall be prescribed by law.. . .
¶ 113. In adopting Article X, Section 1, the framers of the 1848 constitution repeatedly expressed the fundamental importance of a robust system of public *509 education and the "indispensable" role of the superintendent in maintaining, organizing, and advocating for public education.
¶ 114. Justice Prosser's concurrence (as well as Thompson, 199 Wis. 2d at 687-90) recounts much of the relevant constitutional history.[30] I restate and supplement these discussions of the relevant constitutional debates as follows.
¶ 115. First, as I stated before, the delegates to the constitutional conventions considered and explicitly rejected a proposal that a superintendent be selected by gubernatorial appointment and a proposal that the legislature vest "the supervision of public instruction... in such officers as shall hereafter be created by law."[31]
¶ 116. Second, the delegates to the Wisconsin constitutional convention repeatedly referred to the superintendent as "indispensable" or "necessary" to "give uniformity, energy, and efficiency to the [public education] system."[32]
¶ 117. The delegates suggested the superintendent would have a variety of responsibilities, including, among other things: (1) "instituting normal schools for the education of teachers, appointing local superintendents, and visiting every county ... ,"[33] (2) providing an annual report to the legislature regarding the state of schools throughout the state and keeping "a constant and vigilant watch. . . over our *510 schools,"[34] and (3) "know[ing] what has been done in other states and countries — what has worked well and what ill — and who has practical good sense enough to select and put in operation what has been found by experience to be the best. . . ."[35]
¶ 118. In short, " [t]he 1846 and 1847-48 debates [at the Wisconsin constitutional conventions] demonstrate that the position of [superintendent] was intended as a crucial position, distinct from the 'other officers,' and possessing the ability to do more than merely act as an advocate for education. "[36]
¶ 119. In light of this history and the text of the Wisconsin constitution, I agree with Justice Prosser's concurrence (¶ 150) that the role of the superintendent, as envisioned by the framers, requires the authority to set standards:
[T]he framers of the constitution contemplated a superintendent of public instruction who would set standards for public schools and seek a certain uniformity among public schools throughout Wisconsin. It is self-evident that standards for schools throughout Wisconsin could not be set without the power to make rules. "Uniformity" could not be sought or enforced without rules. "Putting a system in operation" could not be *511 achieved without rules. Consequently, the very nature of the office of superintendent required the ability to make rules, irrespective of a specific grant of authority from the legislature. It is hard to believe that the superintendent would have been powerless to begin to develop standards without prior legislative sanction.
f 120. For the reasons set forth, I concur and write separately.
¶ 121. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 See Ronald Sklansky, Changing the Rules on Rule-making, Wis. Lawyer (Aug. 2011), available at http://www.wisbar.org/newspublications/wisconsinlawyer/ pages/article.aspx?Volume=84&Issue=8&ArticleID=2092 (explaining 2011 Wis. Act 21's salient modifications to the process of administrative rulemaking).

 Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶ 94, 264 Wis. 2d 60, 665 N.W.2d 257.

 Thompson, 199 Wis. 2d at 699.

 Thompson, 199 Wis. 2d at 699-700.

 Coyne v. Walker, 2015 WI App 21, ¶ 21, 361 Wis. 2d 225, 862 N.W.2d 606.

 Coyne, 361 Wis. 2d 225, ¶ 31.

 Lead op., ¶ 70. A third reason I disagree with the lead opinion is its failure to be guided by judicial restraint. It goes far afield in discussing numerous matters not necessary to decide the instant case.

 Thompson, 199 Wis. 2d at 699-700.

 Justice Prosser's concurrence, ¶ 150.

 Justice Prosser's concurrence, ¶ 152.

 Lead op., ¶ 43 (quotation omitted); see also lead op., ¶ 64.

 Lead op. ¶ 15. The importance of non-partisan, nonsectarian education was recognized in the Northwest Ordinance of 1787.

 Lead op. ¶ 42.

 Thompson, 199 Wis. 2d at 690.
For differences in methodology of interpreting the Wisconsin constitution, compare, for example, Chief Justice Roggensack's dissent, ¶¶ 180-206; Justice Ziegler's dissent, ¶ 249 n.2; State ex rel. Ekern v. Zimmerman, 187 Wis. 180, 184, 204 N.W. 803 (1925); Buse v. Smith, 74 Wis. 2d 550, 568, 247 N.W.2d 141 (1976); State v. Beno, 116 Wis. 2d 122, 136-37, 341 N.W.2d 668 (1984); Thompson v. Craney, 199 Wis. 2d 674, 680, 690, 693, 54 N.W.2d 123 (1996); State v. Cole, 2003 WI 112, ¶ 10, 264 Wis. 2d 520, 665 N.W.2d 328; Dairyland Greyhound Park, Inc. v. Doyle, 2006 WI 107, ¶¶ 114-118, 295 Wis. 2d 1, 719 N.W.2d 408 (Prosser, J., concurring in part and dissenting in part).

 Thompson, 199 Wis. 2d at 678.

 Thompson, 199 Wis. 2d at 679.

 Thompson, 199 Wis. 2d at 698-99; see also Thompson, 199 Wis. 2d at 700 (Wilcox, J., concurring).

 Thompson, 199 Wis. 2d at 678-80 (citing Polk Cnty. v. State Pub. Defender, 188 Wis. 2d 665, 674, 524 N.W.2d 389 (1994)).

 Coyne, 316 Wis. 2d 225, ¶¶ 35-36.

 Thompson, 199 Wis. 2d at 699 — 700.

 Thompson, 199 Wis. 2d at 699.

 Lead op., ¶ 39.

 Lead op., ¶ 39.

 Lead op., ¶ 40.

 Thompson, 199 Wis. 2d at 699-700.

 Thompson, 199 Wis. 2d at 700; see also State v. Castillo, 213 Wis. 2d 488, ¶ 12, 570 N.W.2d 44 (1997) ("An appellate court should decide cases on the narrowest possible grounds.") (citing State v. Bialock, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989)).

 Lead op., ¶ 70; see also Justice Ziegler's dissent, ¶ 237; Chief Justice Roggensack's dissent, ¶¶ 184-185.

 Justice Prosser's concurrence, ¶ 152. We have recognized a similar point in other contexts. For example, in discussing the powers of sheriffs, who are constitutional officers, in Kocken v. Wis. Council 40, AFSCME, AFL-CIO, 2007 WI 72, 301 Wis. 2d 266, 732 N.W.2d 828, the court defined the sheriffs' constitutional powers in reference to the nature of the office of sheriff as it existed when the constitution was adopted, namely the "immemorial principal and important duties that characterized and distinguished the office." Kocken, 301 Wis. 2d 266, ¶¶ 31-43 (citation omitted).

 Justice Prosser's concurrence, ¶ 150.

 Justice Prosser's concurrence, ¶ 149.

 Thompson, 199 Wis. 2d at 685-86.

 Thompson, 199 Wis. 2d at 687-89 (quoting Journal of the Convention, reprinted in The Convention of 1846, at 568, 570-71, 573-74 (Milo M. Quaife ed. 1919)) (emphasis added).

 Thompson, 199 Wis. 2d at 688 (quoting The Convention of 1846, at 570-71) (emphasis added)

 Thompson, 199 Wis. 2d at 688 (quoting The Convention of 1846, at 570-71).

 Thompson, 199 Wis. 2d at 689 (quoting Journal of the Convention, reprinted in The Attainment of Statehood, 560-61 (Milo M. Quaife ed. 1928)).
The 1846 constitutional convention emphasized uniformity and central control. The convention created a superintendent of public instruction whose exclusive job would be to establish a statewide system. See Joseph A. Ranney, "Absolute Common Ground": The Four Eras of Assimilation in Wisconsin Education Law, 1998 Wis. L. Rev. 791, 794.

 Thompson, 199 Wis. 2d at 690 (emphasis added).