COURT OF APPEALS
DECISION
DATED AND FILED

**September 22, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1337**

Cir. Ct. No. **2018CV176**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

---

PAVLOSKI DEVELOPMENT, LLC AND
ISLAND LAKE AT COPPER POINT, LLC,

   PLAINTIFFS-APPELLANTS,

 V.

DAVID LULICH AND LULICH LANDSCAPING, LLC,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from a judgment of the circuit court for Juneau County: STACY A. SMITH, Judge. *Affirmed.*

Before Kloppenburg, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Pavloski Development, LLC and Island Lake at Copper Point, LLC (together, "Pavloski Development") appeal a circuit court judgment, following a bench trial, dismissing their suit against David Lulich and Lulich Landscaping, LLC (together, "Lulich Landscaping"). For the following reasons, we affirm the judgment.

## BACKGROUND

¶2 The following facts and procedural history are undisputed unless otherwise noted. Pavloski Development owns a residential property development in Juneau County, comprising approximately 400 lakefront properties, called Island Lake at Copper Point ("Island Lake"). Brad Pavloski is a member of Pavloski Development. David Lulich owns Lulich Landscaping, LLC, a landscaping company.

¶3 Island Lake is subject to an "amended and restated declaration of covenants, conditions and restrictions" ("the Covenants"), whose general purpose is to preserve the aesthetic and commercial value of the properties and the development as a whole. The Covenants set forth requirements for architectural uniformity and establish an architectural control committee ("the Committee") to pre-approve certain construction projects. The Committee is part of the Island Lake homeowner's association, and Pavloski is a member of the Committee.

¶4 In January 2017, Pavloski Development recorded the following amendment to the Covenants ("the Approved Builder Restriction"), which requires lot owners to contract only with builders, contractors, and subcontractors on Pavloski Development's "approved list":

> No builder, general contractor, or subcontractor shall commence construction of any structure or improvement

2

> without the prior written approval of the Committee. Developer[1] and the Committee shall have the sole right to prohibit builders, general contractors and subcontractors including … landscapers … from building structure or improvements on the Lots. There is an approved builder, contractor and subcontractor list. Each Lot owner shall have the obligation to determine if a builder, contractor or subcontractor is on Developer's approved list prior to entering into any contract for the construction of improvements.

This amendment also provides that "[t]he Owner's Association, on behalf of the … Committee … shall have the right to assess fines against the Lot Owner if work has begun prior to the approval of plans associated with construction …."

¶5      In addition to the Covenants between Pavloski Development and the lot owners, Pavloski Development has an agreement with certain landscaping companies permitted to do work on Island Lake properties. Pavloski testified that he made unwritten "[h]andshake agreements" with these companies "to be able to [stay] on the [approved] list," under which the companies agreed to "cost share with our marketing [expenses]" by paying Pavloski Development 8% of the landscaping quote. Pavloski testified that this "shared marketing agreement" reimbursed Pavloski Development for its "marketing costs" while allowing the landscapers to have "jobs … simply handed to them." Pavloski testified that Pavloski Development received "over $100,000" under this arrangement in 2020 alone. Lulich Landscaping, in contrast, describes this arrangement as a "kickback scheme." In this opinion, we refer to the unwritten "commission" arrangement

---

[1] Although "Developer" is defined in the Covenants and various amendments as Copper Point Investments, Inc.—a separate entity—we understand that Pavloski, who is a member of Pavloski Development, is also a member of Copper Point Investments and exercises control over the approved contractor list. Lulich Landscaping does not argue that Plaintiff-Appellant Pavloski Development is not a party to the Covenants and amendments or is not the proper party to bring this suit; accordingly, we do not address these issues.

3

between Pavloski Development and certain landscapers as the "handshake agreement."

¶6    Before the Covenants were amended to include the Approved Builder Restriction, Lulich Landscaping had been permitted to perform, and had performed, landscaping work on Island Lake properties. After the amendment was recorded, however, Pavloski told Lulich that Lulich Landscaping would not be on the "approved list" of landscapers. Pavloski testified that he did not want Lulich Landscaping on this list primarily because he was unhappy with the quality of Lulich Landscaping's work. Lulich, in contrast, testified that Pavloski kept his company off of the list because Lulich refused to pay Pavloski Development a percentage of the total contract price on future projects.

¶7    In April 2018, Lulich provided a landscaping quote to Ryan Callahan, an Island Lake property owner. Shortly after that, Lulich Landscaping began landscaping work on Callahan's property. Pavloski learned of the project and told Callahan that his plans were not approved. Callahan agreed to stop Lulich Landscaping from doing any further work. Pavloski also called Lulich, told him to stop working on Callahan's property, and reminded him that he was not on the approved landscaper list. Lulich Landscaping did not do any further work on Callahan's property. Instead, an approved landscaper—Abba Landscaping—finished the Callahan job at the price that Lulich Landscaping had quoted. Pavloski testified that he did not charge Abba Landscaping the usual 8% "commission" because he "did not want to have [Abba Landscaping] working there for free or for a loss."

¶8    In August 2018, Pavloski Development sent Lulich a cease and desist letter, threatening suit if Lulich Landscaping did not agree to stop "its

4

misrepresentations to lot owners in Pavloski's developments that Lulich Landscaping can do work in those developments." In September 2018, Pavloski Development filed the instant suit against Lulich Landscaping for tortious interference with contract. In addition, Pavloski Development sought a permanent injunction prohibiting Lulich Landscaping from: (1) "informing owners of lots … that [it] can perform landscaping work on such lots," (2) "performing landscaping work on lots in Island Lake," and (3) "making representations to any other person or entity that [it] can perform landscaping work on lots in Island Lake."

¶9     The case proceeded to a bench trial, at which Pavloski and Lulich were the only witnesses. On its tortious interference claim, Pavloski Development sought approximately $1,800 in damages, representing the 8% "commission" for the Callahan job that it did not collect from Abba Landscaping.[2]

¶10     At the close of evidence, the circuit court found that Pavloski prohibited Lulich Landscaping from working on Island Lake properties *not* because of the quality of its work but solely because Lulich had refused to participate in the handshake agreement. In addition, the court found that the handshake agreement "[wa]s a kickback scheme"[3] and that Pavloski Development did not have "clean hands." The court further found that Island Lake property owners were largely unaware of the handshake agreement and that the owners were shouldering the additional cost of the "commission," meaning that the owners were unknowingly "paying eight percent more on anything dealing with

---

[2] Pavloski Development also sought punitive damages and attorney's fees and costs.

[3] The circuit court stated that the handshake agreement might violate federal law; however, it expressly declined to decide the point, stating, "I'm not making that ruling today on anything along that line."

landscaping." Moreover, the court acknowledged the fact that Lulich Landscaping was not a party to the Covenants, and it therefore determined that Lulich Landscaping owed no duty to Pavloski Development stemming from the Covenants.

¶11    The circuit court concluded that Pavloski Development had not established its claim for tortious interference with contract. The court further declined to issue an injunction, and it dismissed Pavloski Development's suit with prejudice. Pavloski Development appeals. We will set forth additional facts where relevant.

## DISCUSSION

*I. Tortious Interference with Contract*

¶12    Our review of the circuit court's dismissal, following a bench trial, of Pavloski Development's claim of tortious interference with contract presents a mixed question of fact and law. *Cf.* ***Halverson v. River Falls Youth Hockey Ass'n***, 226 Wis. 2d 105, 115, 593 N.W.2d 895 (Ct. App. 1999) (post-trial ruling on plaintiff's claim for unjust enrichment presented a mixed question of fact and law). We review the court's factual findings for clear error, but we determine de novo whether the court correctly applied the law to the facts found. *See* WIS. STAT. § 805.17(2) (2019-20)[4]; ***Halverson***, 226 Wis. 2d at 115.

¶13    The elements of a claim of tortious interference with contract are:

---

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

6

> (1) the plaintiff had a contract or a prospective contractual relationship with a third party, (2) the defendant interfered with that relationship, (3) the interference by the defendant was intentional, (4) there was a causal connection between the interference and damages, and (5) the defendant was not justified or privileged to interfere.

*Briesemeister v. Lehner*, 2006 WI App 140, ¶48, 295 Wis. 2d 429, 720 N.W.2d 531. The plaintiff bears the burden of proving elements (1) through (4) of the above test. *See Finch v. Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶18, 274 Wis. 2d 719, 685 N.W.2d 154. Element (5) is essentially a defense to the tort, and the defendant bears the burden of proving that it was justified or privileged to interfere. *Id.*, ¶38.

¶14 Pavloski Development argues that the circuit court erred by finding that Pavloski Development was required to prove that Lulich Landscaping was a party to and in privity with the contract. Pavloski Development contends that a claim of tortious interference with contract necessarily rests on there being a party *not privy to the contract* who interfered with the contract. *See Briesemeister*, 295 Wis. 2d 429, ¶48.

¶15 As we address further below, in its oral ruling, the circuit court did indeed discuss the fact that Lulich Landscaping was not a party to the Covenants. Moreover, at times, the court did not specifically distinguish its analysis of the tortious interference claim from its analysis of the claim for a permanent injunction. However, after considering the court's ruling in full, we conclude that any discussion of Lulich Landscaping as a "party" to a contract was meant to address Lulich Landscaping's argument that an *injunction* was not warranted because Lulich Landscaping owed no duty to Pavloski Development—meaning that Lulich Landscaping could not "violate a right of" Pavloski Development through any allegedly harmful future conduct. *See Kocken v. Wisconsin Council*

7

*40, AFSCME, AFL-CIO*, 2007 WI 72, ¶27 n.12, 301 Wis. 2d 266, 732 N.W.2d 828 (internal quotation marks and quoted source omitted). Accordingly, we conclude that the court's comments do not demonstrate a misapplication of the law of tortious interference with contract.

¶16 We further agree with Lulich Landscaping that Pavloski Development's claim for tortious interference with contract fails as a matter of law because—at a minimum—Pavloski Development has not established the fourth element of its claim, *i.e.*, that "there was a causal connection between the interference and damages." *See Briesemeister*, 295 Wis. 2d 429, ¶48. On appeal, as before the circuit court, Pavloski Development identifies the Covenants' Approved Builder Restriction as the contract with which Lulich Landscaping allegedly interfered. Pavloski Development's damages, however, do not stem from any alleged interference with the Approved Builder Restriction. Pavloski Development does not argue, for example, that Lulich Landscaping's alleged interference decreased property values or impeded its ability to sell Island Lake properties.

¶17 Instead, Pavloski Development's damages of approximately $1,800 stem from the "commission" it did not receive under an entirely separate contract—the handshake agreement. The Covenants, however, do not reference or incorporate the handshake agreement. Nor do the Covenants depend in any way on the handshake agreement.[5]

---

[5] In fact, the Covenants are potentially at odds with the handshake agreement. The purpose of the Covenants is to protect the aesthetic and commercial value of the Island Lake properties and the development as a whole. Presumably to this end, the Covenants' Approved Builder Restriction requires property owners to choose from an approved list of builders, contractors, and subcontractors. According to Pavloski, however, the purpose of the handshake

(continued)

¶18    Pavloski Development does not meaningfully respond to Lulich Landscaping's argument that Pavloski Development failed to prove a causal connection between Lulich Landscaping's alleged interference with the Covenants and Pavloski Development's damages.    Instead, Pavloski Development merely states that the two contracts—the Covenants' Approved Builder Restriction and the handshake agreement—are "interconnected."    But this cursory statement does not address Lulich Landscaping's central argument, which is that, under the causation standard for a claim of tortious interference with contract, damages must necessarily stem from the contract with which the defendant allegedly interfered. *See id.*    Accordingly, Pavloski Development's argument is undeveloped, and we will not consider it further. *See* **State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").

¶19    In sum, even if Pavloski Development could show that Lulich Landscaping intentionally interfered with the terms of the Covenants, it cannot show that this interference caused it to incur any damages under the Covenants. Because Pavloski Development's damages stem from the operation of a second and wholly separate contract, its claim fails as a matter of law.

---

agreement is to allow Pavloski Development to recoup some or all of its "marketing expenses." Thus, the handshake agreement arguably undercuts the Covenants: it excludes potentially high-quality landscapers from doing work on Island Lake properties (while incidentally causing owners to unknowingly pay additional costs for landscaping services). Here, for example, the circuit court found that Lulich Landscaping was prohibited from doing work on Island Lake properties not because of the quality of its work but solely because it declined to participate in the handshake agreement. The record supports this finding: Lulich testified to this effect; moreover, he testified that his company was still permitted to do work on other developments owned by Pavloski Development that were not subject to the handshake agreement.

*II. Permanent Injunction*

¶20　The circuit court's decision to deny injunctive relief to Pavloski Development was committed to its sound discretion, meaning that we review that ruling for an erroneous exercise of discretion. *See **Kocken***, 301 Wis. 2d 266, ¶¶24-25. "A circuit court's discretionary decision will be sustained if the circuit court has examined the relevant facts, applied the proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable court could reach." ***Id.***, ¶25.

¶21　To obtain a permanent injunction, "a plaintiff must show a sufficient probability that future conduct of the defendant will violate a right of and injure the plaintiff." ***Id.***, ¶27 n.12 (internal quotation marks and quoted source omitted). "A permanent injunction will not be granted unless there is the threat of irreparable injury that cannot be compensated with a remedy at law." ***Id.*** "In other words … to warrant an injunction, the injury must be real, serious, material, and permanent, or potentially permanent; the right to the injunction must be clear; and the reasons for granting it strong and weighty." ***Id.*** (internal quotation marks and quoted source omitted).

¶22　As stated, Pavloski Development sought a permanent injunction prohibiting Lulich Landscaping from: (1) "informing owners of lots … that [it] can perform landscaping work on such lots," (2) "performing landscaping work on lots in Island Lake," and (3) "making representations to any other person or entity that [it] can perform landscaping work on lots in Island Lake." It is unclear from the phrases "can perform landscaping work" whether Pavloski Development sought an injunction to prevent Lulich Landscaping from *falsely* telling lot owners that Lulich Landscaping was somehow approved to do landscaping work in Island

Lake. (Emphasis added.) If this is the basis for the claim, however, Pavloski Development has not provided any evidence from the record (nor have we identified any) to support the premise that Lulich Landscaping made any such misrepresentations. To the contrary, Lulich's unrefuted testimony was that he provided quotes to owners and attempted to perform landscaping work on Island Lake properties but that he never misrepresented his status as a landscaper approved to work in the development. Accordingly, to the extent this request is premised on Lulich Landscaping's misrepresentations to lot owners, the circuit court did not erroneously exercise its discretion in denying the injunction request. *See Johnson v. Roma II-Waterford LLC*, 2013 WI App 38, ¶34, 346 Wis. 2d 612, 829 N.W.2d 538 (we may independently review the record to identify reasons supporting the circuit court's exercise of discretion).

¶23 As to the injunction request more generally—including the request to enjoin Lulich Landscaping from performing landscaping work—we agree with the circuit court that Pavloski Development failed to establish any basis for that request. As the court noted, Lulich Landscaping indisputably was not a party to the Covenants, which governed only the actions of property owners *vis-a-vis* the Committee and Pavloski Development. Thus, the court correctly concluded that Lulich Landscaping owed no duty to Pavloski Development stemming from the Covenants. Pavloski Development points to no other source of duty that Lulich Landscaping might owe to Pavloski Development that would require Lulich Landscaping to refrain from providing quotes to property owners or to refrain from performing work on property owners' lots. *See Kocken*, 301 Wis. 2d 266,

¶27 n.12. We therefore conclude that the circuit court did not erroneously exercise its discretion in rejecting Pavloski Development's request for an injunction.[6]

## CONCLUSION

¶24 For the reasons stated, we affirm the circuit court judgment dismissing Pavloski Development's suit with prejudice.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] The circuit court may have also determined that an injunction was unwarranted because there were "strong and weighty" reasons *against* granting it, namely, that Pavloski Development was involved in a potentially illegal kickback scheme that Lulich was attempting to circumvent through legal and appropriate means. *See **Kocken v. Wisconsin Council 40, AFSCME, AFL-CIO***, 2007 WI 72, ¶27 n.12, 301 Wis. 2d 266, 732 N.W.2d 828 (internal quotation marks and quoted source omitted). Moreover, the court may have determined that an injunction was unwarranted because Pavloski Development had an adequate remedy at law, namely, to directly sue any lot owners for damages caused by Lulich Landscaping's unapproved work. *See id.* We need not reach, and therefore do not address, these potential additional bases for denying the injunction.